## GREENWALD v. UNITED STATES.

### No. 45511.

Court of Claims.

Nov. 6, 1944.

Temple W. Seay, of Washington, D. C.
(Phil D. Morelock, of Washington, D. C.,
and Weil, Gotshal & Manges, of New York
City, on the briefs), for plaintiff.

H. S. Fessenden, of Washington, D. C.,
and Samuel O. Clark, Jr., Asst. Atty. Gen.
(Robert N. Anderson and Fred K. Dyar,

both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff was employed by a corporation under a contract which provided that, in addition to a fixed salary, he should receive a percentage of the amount by which the profits of the corporation exceeded a stated sum. The corporation had, from the time of its organization in 1929, employed the same firm of certified public accountants to audit its accounts and inform it of its financial position. The supervising accountant who directed the audits of the corporation's books during the years 1934, 1935, and 1936 caused false audits to be made which showed that the corporation had made profits greatly in excess of its actual profits for those years. The corporation paid the plaintiff bonuses computed upon the basis of these exaggerated profits, and the plaintiff paid the Government income taxes for those years upon the bonuses so received, as well as upon his other income.

In 1938 the corporation discovered the falsifications of the auditor, and the plaintiff in that year and in 1939 repaid to the corporation the amount of the overpayments to him. In 1942 the plaintiff filed, apparently timely, protective claims for refund of taxes paid by him in 1938 and 1939, on the ground that these payments were deductible business losses. These protective claims were intended to preserve his rights in case he should not succeed in recovering the taxes paid in 1934, 1935, and 1936, on the exaggerated bonuses, as to which he had filed claims for refund in 1938. Refunds were not made in response to his claims filed in 1938 for the years 1934, 1935, and 1936, hence this suit.

The corporation deducted the bonuses paid the plaintiff for the years in question as business expenses when it made its returns for taxes for those years. When the falsifications were discovered, the Commissioner of Internal Revenue adjusted the taxable income of the corporation for those years by disallowing the deductions.

The Government contends that, as to the alleged overpayment for 1934, this suit was not commenced within two years after the plaintiff's claim was rejected and hence is barred by Section 3226 of the Revised Statutes, 26 U.S.C.A. Int.Rev.Code, § 3772. The plaintiff at the argument conceded the validity of this defense, hence we do not further consider the 1934 situation.

We go now to the merits of the claims for 1935 and 1936, as to which claims for refund were filed in time and this suit was commenced in time. The Government relies principally on the doctrine stated in North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, as follows: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." This doctrine has been applied in many cases. The plaintiff urges that it is not applicable here, because his receipt of the bonuses was due to a mistake of fact, he and the corporation both believing that the corporation had made profits which, under his contract of employment, entitled him to the bonuses paid him. He points out that, upon the discovery of the true facts, he did not contest his obligation to refund the overpayments to the corporation and urges that the real reason for the "claim of right" doctrine is not present in his case. We agree with the plaintiff.

If one receives income he should pay taxes on it. If, due to mistake, he is aware of no reason why he is not entitled to keep it, he will pay taxes on it, as the plaintiff did in this case. If he is aware, or is made aware before he pays his taxes, that his right to keep it is questioned, he should not, in effect, ask the Government to become a party to the contest by waiting for its taxes until the contest is resolved, which may be a long time. The orderly management of the revenues might be disturbed if such a postponement were tolerated, and certainly there is no statutory warrant for postponing payment of taxes for such a reason. A conditional claim for refund, filed within the time set by the statute but stating that a refund would be desired if certain litigation should result unfavorably to the taxpayer, would not be a claim which the Commissioner of Internal Revenue could act upon before the litigation was terminated and would hardly be a proper claim.

Where, however, one pays income taxes upon income which he physically receives, but which he is not allowed to keep, the Government's retention of the tax is essentially unjust. In a case such as the instant one, where, due to ignorance of fact, the taxpayer had no choice in the matter, that injustice is complete. Even in the case of questioned income, if the taxpayer honestly believes that he has a right to the income, it is unjust to require him, in effect, to give up the income in order to keep himself free from liability to the Government for a tax on it, even though it should turn out that he must pay the whole amount back to its source and he does so within the permitted period for filing claims for refunds of taxes. Perhaps the embezzler or the usurer, who knows or should know of his liability to pay back what he has received, deserves no better than he gets under the "claim of right" doctrine, but even as to him the Government should hardly want to keep the share of his unlawful income which has been paid to it as taxes, if all of it is needed to make whole his victims.

We conclude, therefore, that the "claim of right" doctrine does not apply to the plaintiff's situation. He overpaid his taxes because of a mistake of fact. He filed timely claims for refund. We do not think that the allowance of claims such as this, promptly made as this one was, will have any noticeable adverse effect upon the Government's revenue.

The Government asks us to find, as the Securities and Exchange Commission found in a case relating to the delisting of the shares of the corporation which employed the plaintiff, that the plaintiff, as an officer of the corporation, was negligent in not discovering the accountant's falsifications. The Government presents no evidence except the Commission's decision. We need not determine whether that evidence would be sufficient to support such a finding, since we think that, if the plaintiff was negligent, that negligence should not increase his liability for income taxes, or forfeit his right to a refund of taxes paid on income which he had not earned and did not keep.

The plaintiff may recover $7,290.49, with interest according to law. It is so ordered.

JONES, Judge, took no part in the decision of this case.