## WILCOX et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 10895.

Circuit Court of Appeals, Ninth Circuit.

March 30, 1945.

Edward F. Lunsford and Bert M. Goldwater, both of Reno, Nev., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, Miriam Lashley, and Muriel Paul, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is a review of decision of the Tax Court holding that an embezzler of moneys

934

derives income from such moneys under Section 22 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22, providing

"Sec. 22.   Gross income

"(a) General definition. 'Gross Income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any 'one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

and that such embezzled funds constitute a part of the embezzler's taxable gross income.

Laird Wilcox, one of the petitioners, hereafter called Wilcox, entered the employ of the Nevada Transfer & Warehouse Co., a Nevada corporation, in December 1937, in the capacity of bookkeeper and continued in its employ until 1942. During his employment, Wilcox received a regular salary, payable semi-monthly, and was not allowed to draw his salary in advance and was paid his salary promptly as and when due. It is stipulated that at no time during that period of employment was the employer indebted to Wilcox other than for his salary which was currently paid.

In June 1942, when the books of the Nevada Transfer & Warehouse Co. were audited, it was discovered for the first time that Wilcox had converted to his own use between June 1941 and up to and including June 20, 1942, a total sum of $22,896.01, of which sum $12,748.60, now in controversy, was taken by him between and including June 1941 and December 31, 1941. The $12,748.60 was composed entirely of miscellaneous sums of money belonging to the Nevada Transfer & Warehouse Co. and received and collected by Wilcox in his capacity of bookkeeper. He withheld the money which he had so embezzled from his employer and then used the money for gambling, losing practically all of it in different gambling houses in Reno, Nevada.

And information was filed against Wilcox for the crime of such embezzlement in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, on July 20, 1942. On the same day the information was filed he was arraigned and entered a plea of guilty as charged. On July 21, 1942, he was sentenced to not less than two nor more than fourteen years' imprisonment in the State Penitentiary at Carson City, Nevada. He served time in the penitentiary on this sentence until paroled in December 1943.

The taking of the moneys by Wilcox from the Nevada Transfer & Warehouse Co. has never been condoned or forgiven by the employer and it always has and now does hold him liable to restore the same. Wilcox at no time claimed, nor could have claimed, that he took or held the moneys under any claim of right.

It is agreed that after the appropriation of the moneys there were no "dealings in the property" embezzled by which there were "gains" or "profits" within section 22, supra. The sole question is whether the embezzled moneys per se are to Wilcox "gains or profits and income derived from any source whatever" under that section.

■ The crime of embezzlement in Nevada is complete when the embezzler "use[s] or appropriate[s] such money * * * in any manner, or for any other purpose, than that for which the same was * * * intrusted." State v. Trolson, 21 Nev. 419, 425, 427, 32 P. 930, 931. Here the record shows that the appropriation for gambling purposes occurred at the taking of the moneys.

■ Under the law of Nevada the employer here could have replevined the embezzled moneys in the possession of the embezzler as soon as he appropriated them. Sec. 8681, Nevada Compiled Laws, 1929; Perkins v. Barnes, 3 Nev. 557; Studebaker Co. v. Witcher, 44 Nev. 468, 471, 199 P. 477, 201 P. 322. Also under the Nevada law an embezzler is liable to the party from whom the property is appropriated for an amount equal to its value. This is so whether after appropriation the moneys are hid in a basement or used in gambling. The use in no way transfers the property right of the owner in the moneys.

■■ We agree with the Fifth Circuit decision in McKnight v. Commissioner, 127

F.2d 572,[1] that since the embezzler took the moneys with no conceivable claim or colorable claim of right, and held them not as his but as his employer's, it at no time became a taxable gain or profit or income to Wilcox, and adopt the reasoning of that opinion, based upon the statement in North American Oil Consolidated Co. v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L. Ed. 1197; "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

Respondent claims that the decision in the Eighth Circuit in Kurrle v. Helvering, 126 F.2d 723, 725, is contra. That decision, however, relies upon the statement of law in the North American Consolidated Oil case, supra, concerning a taxpayer who "receives earnings under a claim of right" and appears to hold that, though received without claim of right, they are taxable if the embezzler subsequently "treated said funds as his own" in a profitable enterprise. If this be not a ground of distinguishing the Kurrle case from the instant review, we are not in accord with that opinion.

The Commissioner relies upon Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. That case construed a complicated trust instrument to determine to whom the income of the trust is taxable. In the present case there was no income to the embezzler from the embezzled funds and no analogous trust relationship. What was said in the Clifford case at page 334 of 309 U.S. at page 556 of 60 S.Ct., 84 L.Ed. 788, concerning "Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme as the owner of the corpus," has no application to the title to embezzled moneys which the owner could replevin as soon as appropriated by the embezzler.

In all of the other cases cited by the Commissioner[2] the moneys, though fraudulently or illegally acquired, came to the taxed party from their owner by the latter's conscious act, in response to a claim for an agreed service by the party to whom they were paid. All are cases where the recipients are taxable within the rule in the North American Consolidated Oil case, supra. They have no bearing on the taxability of an embezzler in whose hands the embezzled money always belonged to the wronged owner.

The order of the Tax Court is reversed.

---

[1] Cf. Boston Consolidated Gas Co. v. Commissioner of Internal Revenue, 128 F.2d 473, 477, opinion Magruder, C. J.; Caldwell v. Commissioner of Internal Revenue, 5 Cir., 135 F.2d 488, 491.

[2] Such as Caldwell v. Commissioner, 5 Cir., 135 F.2d 488; Chadick v. United States, 5 Cir., 77 F.2d 961; Humphrey v. Commissioner, 7 Cir., 125 F.2d 340.