### GARGARO v. UNITED STATES.

#### No. 47677.

Court of Claims.

Nov. 3, 1947.

WHITAKER, Judge, dissenting.

———◆———

B. Tracy Ansell, of Washington, D.C. (George H. Klein, Ethan C. Prewitt and Clark, Klein, Brucker & Waples, all of Detroit, Mich., and Ansell & Ansell, of Washington, D. C., on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Theron L. Caudle, Asst. Atty. Gen. (Robert N. Anderson and Andrew D. Sharpe, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and MADDEN, WHITAKER, HOWELL and LITTLETON, Judges.

MADDEN, Judge.

The plaintiff sues to recover income taxes paid by him for the year 1942. The Government demurs to the petition. The facts stated in the petition are as follows:

During the year 1942, the plaintiff was an officer and employee of Gargaro Company, Inc., a Michigan corporation. His contract of employment with the company provided that he should receive a stipulated salary and, in addition, a bonus consisting of 10 percent of the net profits of the corporation for that year. The amount of the net profits was to be determined by the directors of the corporation with reference to its regular accounting methods. The determination of the net profits was made on or about December 31, 1942, and their amount was determined to be $650,748. The plaintiff was paid $65,074.80, his 10 percent bonus. He included this amount along with his other income in his income tax return and paid the taxes on it.

About August 1, 1944, pursuant to Section 403 of the Act of April 28, 1942, 56 Stat. 226, 245, as amended by the Act of October 21, 1942, 56 Stat. 982, and the Act of July 1, 1943, 57 Stat. 347, 348, 50 U.S. C.A.Appendix, § 1191, the Reconstruction Finance Corporation Price Adjustment Board initiated renegotiation proceedings against Gargaro Company, Inc. with respect to amounts realized by that company during 1942 under contracts with governmental agencies and under subcontracts with contractors with governmental agencies. On March 3, 1945, the Board determined, as expressed in an agreement between the Board and the company dated that day, that the company should refund to the Board $240,000 of the amount realized by it under its contracts and subcontracts during 1942. The company refunded the $240,000 on or before March 22, 1945. This refund reduced the company's net profits for 1942 from $650,748 to $410,-748, and the plaintiff's 10 percent of those profits from the $65,074.80 which he had been paid at the end of 1942 to $41,074.80, a reduction of $24,000. On June 28, 1945, the company called upon the plaintiff to repay to the company the $24,000, which he did on June 29, 1945.

On or about August 22, 1945, which was in time, the plaintiff filed with the Collector of Internal Revenue for the Michigan District a claim for a refund of $18,985.28, which was the amount by which his income tax had been increased by the inclusion in his income for 1942 of the $24,000 subsequently refunded to the company. The statutory time having elapsed and no response having been made to this claim for refund, the plaintiff brought this suit. He says in his petition that, as to the $24,000, he was, from the time of its payment to the plaintiff by the company until he repaid it to the company, definitely and unconditionally obligated to repay it because it was paid by the company and received by the plaintiff under a mutual mistake of fact as to what was the company's net income for 1942.

As we have said, the Government demurs. It says that the plaintiff received the $24,000 in 1942 under a claim of right, and without restriction as to its disposition, and that that ends the controversy. It points to North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, the language of which tends to bear out its contention.

The plaintiff's situation seems to us to be like that of the plaintiff in Greenwald v. United States, 57 F.Supp. 569, 102 Ct.Cl. 272. In that case, as in this, the plaintiff was employed at a salary plus a percentage of net profits. The corporation's accountants made false audits for three successive years showing that the corporation had made larger profits than it had made. The corporation paid the plaintiff bonuses on the basis of the false audits and the plaintiff paid income taxes upon the bonuses received. When the falsifications were discovered, the plaintiff repaid the excesses to the corporation and filed claims for refunds of the parts of its income taxes attributable to the excesses. We held that plaintiff could recover.

We were impressed in that case, and, of course, are similarly impressed here, with the injustice of the Government's position. For the Government to insist upon keeping taxes paid to it by a taxpayer under the mistaken belief that he has received income for his own use and benefit, when in fact he received it only by reason of an honest mistake, and was obliged to and did give it back and got no benefit from it, there is nothing to be said morally. If the Government can do this,

it is only because the law is plainly so written, or because a fairer interpretation of an unclear law would throw the public revenues into serious confusion.

■ As to the law being plainly so written, it is not. The case of Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 549, 90 L.Ed. 752, 166 A.L.R. 884, shows how far from clear the law is. There Wilcox had embezzled money from his employer and lost it in gambling. His employer never forgave the embezzlement and was asserting its right to be repaid. The Commissioner of Internal Revenue and the Tax Court held that the embezzled money was taxable income to Wilcox. The Circuit Court of Appeals for the Ninth Circuit, 148 F.2d 933, reversed the Tax Court and the Supreme Court of the United States affirmed the decision of the Circuit Court of Appeals. We are asked to hold that an honest man who received money under a mistake and immediately restored it when the mistake was discovered, must pay an income tax upon it, whereas an embezzler who received money and used it (we suppose it is immaterial that he lost it in gambling) and did not restore it to the rightful owner, owes the Government no tax. We would suppose that if there was to be a difference in the treatment of these two situations, the difference should be that the honest taxpayer would be treated more considerately than the embezzler.

■ In the North American Oil Consolidated case, supra, the taxpayer received the income in 1917 and was taxed upon it for that year. He claimed that he should, instead, have been taxed upon it in 1922, the year in which litigation about his right to the money was concluded in the appellate courts. The appeals had been without supersedeas, hence he not only had received the money in 1917, and had kept it, but had been completely free to use it in the meantime, although fully aware of the contest about his right. The decision was, of course, completely just. The Supreme Court's dictum, upon which the Government relies, cannot be literally followed in view of this pertinent language in the case of Commissioner v. Wilcox, supra: "For present purposes, however, it is enough to note that a taxable gain is conditioned upon (1) the presence of a claim of right to the alleged gain and (2) the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain."

The plaintiff's claim of right in this case, as in the Greenwald case, supra, was neutralized by the fact that he was ignorant of the relevant facts. The absence of a definite unconditional obligation to repay was due only to the fact that a Governmental agency had not yet exercised its statutory discretion to initiate renegotiation proceedings. But the situation was that whatever deduction of profits might be made by the renegotiators, there would be a definite, unconditional obligation on the plaintiff to refund his proportional share of the deduction.

As to whether it would throw the Government's revenues into serious disorder to allow the plaintiff to escape taxation upon income which he did not keep and enjoy, we think that it would not. As we said in the Greenwald case, supra, the taxpayer in these cases of mistake will pay his tax because he is not aware of any reason why he should not. If, within the period permitted other taxpayers for filing refund claims to rectify errors, he discovers the mistake and disgorges the income, we think that his getting his tax money back will not endanger the revenues.

The defendant's demurrer is overruled. It is so ordered.

JONES, Chief Justice, and HOWELL and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

If I had to decide this case according to what I think the law ought to be, I might decide it as the majority has done; but our job, of course, is to decide the case according to the law as it is, and I do not think the majority has done this.

It does seem unjust that plaintiff should have to pay a tax on income he was not allowed to keep, but I think the law says he should. He took his bonus from the company believing he was entitled to it, and with the right to do with it what he pleased. It was his absolutely and unconditionally, so

far as any one knew until long after the taxable year had passed. Under all the authorities this constituted income to him.

The following statement from North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 615, 76 L.Ed. 1197, has been many times quoted with approval and relied upon: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

See, among others, Schramm v. United States, 36 F.Supp. 1021, 93 Ct.Cl. 181; Commissioner v. Alamitos Land Co., 9 Cir., 112 F.2d 648; Penn et al. v. Robertson, 4 Cir., 115 F.2d 167; National City Bank of New York v. Helvering, 2 Cir., 98 F.2d 93; Saunders v. Commissioner, 10 Cir., 101 F. 2d 407.

This is the law today.

The Supreme Court in Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, 166 A.L.R. 884, did not hold to the contrary. An embezzler does not take money under a claim of right, and he is certainly under the obligation to repay it; an obligation that arises at the moment he takes it, not some years later, as in the case at bar.

Nor can it be said that plaintiff received this income under a mutual mistake. There was no mistake as to the amount of the company's income on which his bonus was figured. So far as anyone knew at the time, or could then ascertain, this was the company's income.

It is true there was a contingency that the Government might claim that this was too much income and might try to get the company to pay back some of it; but whether they would or not, no one then knew; nor did they know how much of it the Government might claim was excessive, or what refund might be finally determined upon. This was contingent, speculative, imaginary, until long after the close of the taxable year. So far as anyone then knew, or could have ascertained at the time, this company actually had an income for the year 1942 of $650,748.00. On this basis plaintiff's bonus was computed, as it should have been. Tax liability is determined on the basis of the facts at hand or ascertainable at the close of the taxable year, not on what may happen in the future. Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337.

The facts of this case are different from those in Greenwald v. United States, 57 F. Supp. 569, 102 Ct.Cl. 272. In that case there was a mistake as to what the company's income was; the accountants had falsified the books. Here, the company's income was correctly computed. The reduction in it came about as a result of an event which happened long after the close of the taxable year.

I think the demurrer should be sustained and the plaintiff's petition should be dismissed.