**HABERKORN et ux. v. UNITED STATES.**
**BARRY et ux. v. UNITED STATES.**

Nos. 6695, 6697.

District Court, E. D. Michigan, S. D.

April 6, 1948.

William C. Allee, of Detroit, Mich., for plaintiffs.

Thomas P. Thornton, U. S. Dist. Atty., of Detroit, Mich., for defendant.

PICARD, District Judge.

This is an action brought by plaintiff taxpayers to recover certain income taxes paid on amounts received by them from their employer through error and part of which income they were subsequently obligated to return. The above cases were consolidated for trial and this opinion covers both. The years involved are 1942 and 1943, but the 1943 overpayment was immediately returned to the corporation and seemingly is not here at issue.

Facts

Plaintiffs Haberkorn and wife and plaintiffs Barry and wife, each made joint returns in 1943 on their respective 1942 incomes, which included not only salaries of the husbands but a 25 per cent bonus of what was supposed to be the net profits of the employer corporation for that year. This was as provided in a resolution duly passed by the board of directors during 1942.

In 1944 the corporate books were audited and it was determined that there had been an overpayment of bonuses for 1942. As a result the joint taxpayers each became obligated to return $7,706.47—the overpayment which the husbands had received that year. The corporation itself filed claim for refund for overpayment of its 1942 income tax which was allowed.

Taxpayer Haberkorn then entered the armed services January 1, 1945, and while serving his country received $100.00 per month salary from the corporation for sixteen months, which was credited each month against his corporate indebtedness. On April 18, 1946, he surrendered 225 shares of stock back to the corporation, thereby balancing off his indebtedness.

Barry, the other taxpayer, now owns 90 per cent of the outstanding corporate stock but has repaid no part of his $7,706.47 indebtedness to that corporation.

On June 1, 1945, plaintiffs filed claims for refund of taxes which they had paid on their 1942 income. This, of course, was before the Haberkorns had made complete repayment. Barry's request was denied but the Commissioner has not yet acted on Haberkorn's petition.

## Conclusions of Law

The law and regulations admittedly concerned are appended by footnote [1] and the case would present little difficulty were it not for the comparatively recent decision of Commissioner of Internal Revenue v. Wilcox et al., 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, 166 A.L.R. 884. It was well settled up to that time that the income tax laws of the United States were administered on an annual basis and if a taxpayer received earnings under a claim of right, without restriction as to its disposition, he was required to make a return on that income even though he might be adjudged liable to restore its equivalent later. This was the law restated in North American Oil Consolidated v. Burnet, 286 U.S. 417-424, 52 S.Ct. 613, 76 L.Ed. 1197 and followed consistently. Our own Sixth Circuit Court of Appeals in Ford v. Commissioner of Internal Revenue, 51 F.2d 206, 207, certiorari denied 284 U.S. 666, 52 S.Ct. 41, 76 L.Ed. 54, in line with the trend said—"The true normal criterion to be applied in this class of case is the actual receipt and retention during the year in question of what was then considered to be income, not whether the taxpayer exposed himself to possible personal liability."

Also in First National Bank et al. v. Commissioner of Internal Revenue, 6 Cir., 107 F.2d 141, 143—"It is settled law that if a taxpayer derives a profit without restriction as to its disposition it is income even though there is a contingency which may require him to restore its equivalent in a later year."

In Penn v. Robertson, 4 Cir., 115 F.2d 167, 175, the court said—"A cardinal principle of federal income taxation requires annual returns and accounting; and this principle requires the determination of income at the close of the taxable year without regard to the effect of subsequent events."

Also see Fleischer v. Commissioner of Internal Revenue, 8 Cir., 158 F.2d 42; Moore v. Thomas, 5 Cir., 131 F.2d 611.

The question now is, did the Wilcox case, supra, so modify previous holdings as to create an exception under which plaintiffs may benefit? We think not. In that case the government sought to compel Wilcox to pay an income tax on money which he

---

[1] Internal Revenue Code:

"Sec. 22, [as amended by Sec. 1. Public Salary Tax Act of 1939, c. 59, 53 Stat. 574]. Gross Income.

"(a) General Definition. 'Gross Income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *" 26 U.S.C.A. Int.Rev.Code, § 22(a).

Treasury Regulations 111, promulgated under the Internal Revenue Code:

"Sec. 29.22(a)—1. What Included In Gross Income.—Gross income includes in general compensation for personal and professional service, business income, profits from sales of and dealings in property, interest, rent, dividends and gains, profits, and income derived from any source whatever, unless exempt from tax by law. (See sections 22(b) and 116.) In general, income is the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets. Profits of citizens, residents, or domestic corporations derived from sales in foreign commerce must be included in their gross income; but special provisions are made for nonresident aliens and foreign corporations by sections 211 to 237, inclusive, and, in certain cases, by section 251, for citizens and domestic corporations deriving income from sources within possessions of the United States. Income may be in the form of cash or of property.

* * * * * * *

"Sec. 29.22(a)-2. Compensation For Personal Services.—Commissions paid salesmen, compensation for services on the basis of a percentage of profits, * * * are income to the recipients, * * *.

had embezzled. Following what it believed to be the time honored rule the tax court held that embezzled money constituted taxable income to the embezzler but the Supreme Court, speaking through Mr. Justice Murphy, in reversing, stated [327 U.S. 404, 66 S.Ct. 549]: "The question, rather, is whether the taxpayer in fact received a statutory gain, profit or benefit." Then Mr. Justice Murphy adds that the embezzler "was at all times under an unqualified duty and obligation to repay the money to his employer. * * * The debtor-creditor relationship was definite and unconditional. * * * The taxpayer thus received no taxable income from the embezzlement." And in order to clearly enunciate the scope of the court's holding, Mr. Justice Murphy specifically sets out just what the elements of taxable income must be, using the following language—"* * * taxable gain is conditioned upon (1) the presence of a *claim of right* to the alleged gain and (2) the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain." (Emphasis ours.)

Let us analyze those two provisions because plaintiffs in their brief on page 2, evidently in anticipation, say—"There is no contention that a dollar of this money was received by either of these gentlemen under *claim of right*."

That statement just does not coincide with the facts.

When these plaintiffs received these bonuses they were receiving them under *claim of right*. They both thought they were entitled to this money and they kept it as income for two or three years. True, Haberkorn has returned the extra amount while Barry has never paid back to the corporation any part of the overpayment he received in 1942. Since Barry owns 90 per cent of the corporation, unless there is some great demand by stockholders owning the other 10 per cent, he may never be obligated to return that money. But this situation does not change the law.

In our opinion the facts in this case squarely meet the conditions set forth in the Wilcox decision. Here there was the "presence of a claim of right to the alleged

gain" in 1942 and there was "the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain" at that time. The definite and unconditional obligation to return or repay came later.

In the Wilcox case the embezzler never had any claim of right to the funds embezzled and from the very instant he unlawfully took the money there was a definite and unconditional obligation on his part to repay or return it. Therefore he never had a "taxable gain."

We recognize that since the Wilcox decision one district court apparently accepts plaintiffs' interpretation of that case, for in Gargaro v. United States, Ct.Cl., 73 F. Supp. 973, when the government demurred to taxpayer's petition for a refund of taxes paid on income of 10 per cent of corporate profits which were reduced after renegotiation of certain government contracts, (citing North American Oil Consolidated v. Burnet, supra, as authority) the court held that the government must answer and go to trial on the merits. But in Wells v. United States, 64 F.Supp. 476, 106 Ct.Cl. 378, Wells was almost in the same position as Wilcox because he knew he was not entitled to the $45,000.00 which he had received as an advance; and in Greenwald v. United States, 57 F.Supp. 569, 102 Ct.Cl. 272, the bonuses were overpaid by reason of a false audit and immediately upon discovery were paid back to the corporation. Both the Wells and Greenwald cases were cited by plaintiffs but neither Wells nor Greenwald ever had a real "claim of right."

In the case at bar, however, there was no false audit. The mistake was due to two reasons, first, failure to include certain corporate expenses and, second, failure of the corporation to adopt the usual accounting practices of determining the percentage of completion of each contract from the architect's certificate in its own files in setting up on its books the accrued profits of certain building contracts.

Plaintiffs are not without remedy because as they repay the money which they received through error, they should have the benefit thereof in deductions. Thus the amount of income tax they pay in that par-

ticular year is lessened and perhaps to their advantage.

For these reasons I hold that plaintiffs are not entitled to recover in this action but that Haberkorn is entitled to the deductions in his 1945-46 incomes if and when he makes such claim.