HABERKORN et al. v. UNITED STATES.

No. 10734.

United States Court of Appeals
Sixth Circuit.

March 28, 1949.

588

William C. Allee, of Detroit, Mich. (William C. Allee, of Detroit, Mich., on the brief), for appellants.

Carlton Fox, of Washington, D. C. (Theron Lamar Caudle, George A. Stinson, Ellis N. Slack, Lee A. Jackson, and Hilbert P. Zarky, all of Washington, D. C., and Thomas P. Thornton and Roger P. O'Connor, both of Detroit, Mich., on the brief), for appellee.

Before HICKS, Chief Judge, and SIMONS and MILLER, Circuit Judges.

MILLER, Circuit Judge.

Appellants, C. Henry Haberkorn, III, and Hendrieka B. Haberkorn, his wife, brought this action in the District Court to recover $2,970.51 which they claim has been illegally collected from them as income taxes for the year 1942. The District Court dismissed the action.

Haberkorn, during 1942 and 1943, was an employee of Haberkorn-Barry Company, a Michigan corporation engaged in the general contracting business in Detroit. The corporation kept its books on an accrual basis. Haberkorn's compensation for 1942 was fixed by resolution of the Board of Directors at a salary of $255 per month and a bonus of 25% on all net income, as defined in the resolution, for the calendar year 1942 over $10,000.

The corporation in setting up on its books the accrued profits from building contracts in process of completion failed to adopt the usual accounting practice of determining the percentage of completion of each contract from the architect's certificate, as a result of which the net profit of the corporation for 1942, before bonuses and income taxes, was erroneously calculated to be $64,813.69. On this basis Haberkorn was paid $16,900, including salary and bonus. During 1944, it was found that the correct gross profit for 1942, upon which the corporate bonuses should have been based, was $33,174.14, and that the proper amount of Haberkorn's compensation for 1942 should have been $9,193.53 instead of $16,900. On December 30, 1944, the overpayment of $7,706.40 was added to Haberkorn's account on the books of the Company under the item of account entitled "Advances to Executives."

On January 1, 1945, Haberkorn entered the armed services, during which period he received a salary of $100 per month, which was from time to time credited against his indebtedness until $1600 had been paid thereon. On April 18, 1946, Haberkorn paid the balance of his indebtedness in full through a sale of his stock in the Haberkorn-Barry Company to the Company.

The appellants had, within the time provided, filed their joint returns with the Collector of Internal Revenue at Detroit, reporting their income tax for the years 1942 and 1943 and had paid the tax disclosed thereby. The returns included the amount of $16,900 paid to Haberkorn in 1942. On May 31, 1945, within the time permitted by statute, appellants filed their claim for a refund for the year 1942 in the amount of $2,970.51 on the theory that the 1942 income should have included only the amount of the bonus to which Haberkorn was entitled and not the excess amount which he had in fact been paid and had been required to repay later to the Company. Amended income tax returns for 1942 and 1943 were also filed. Following failure of the Commissioner to act upon the claim, the appellants filed their present action in the District Court. The District Judge was of the opinion that the full amount of the money paid to Haberkorn in 1942 was received under a claim of right and was taxable in its entirety in the year in which received, and that appellant should claim deductions for the amount of the bonus he was required to repay in the years in which such repayments were made.

We agree with the conclusion of the District Judge that the case is controlled by the decision in North American Oil

Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197. In that case, following litigation over the ownership of certain oil land which ended in the entry of a judgment by the trial court in 1917 in favor of the taxpayer, the receiver of the property involved paid to the taxpayer in 1917 the net profits which had been earned from the property during the receivership. The Government's appeal from the judgment was finally dismissed and the litigation ended in 1922. The taxpayer did not include the money so received in its income tax return for 1917. The Commissioner contended that it should have been so included. The Supreme Court sustained the Commissioner, holding that the profits earned by the property in 1916 became income of the Company in 1917 when it actually received them, even though a subsequent reversal of the judgment would have required it to repay it. The Court said—"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * If in 1922 the Government had prevailed, and the company had been obliged to refund the profits received in 1917, it would have been entitled to a deduction from the profits of 1922, not from those of any earlier year." This rule has been followed for many years throughout the various circuits in similar situations, including several cases in this Court. Board v. Commissioner, 6 Cir., 51 F.2d 73, 75, 76; Ford v. Commissioner, 6 Cir., 51 F.2d 206; First National Bank v. Commissioner, 6 Cir., 107 F.2d 141, 143; St. Regis Paper Co. v. Higgins, 2 Cir., 157 F.2d 884; Greenfield v. Commissioner, 4 Cir., 165 F.2d 318; Akers v. Scofield, 5 Cir., 167 F.2d 718; Fleischer v. Commissioner, 8 Cir., 158 F.2d 42; Chicago, R.I. & P. Ry. Co. v. Commissioner, 7 Cir., 47 F.2d 990, 992; Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122, 123-124; National City Bank v. Helvering, 2 Cir., 98 F.2d 93, 95 through 96; Griffin v. Smith, 7 Cir., 101 F.2d 348, 351; Saunders v. Commissioner, 10 Cir., 101 F.2d 407, 409; Commissioner v. Alamitos Land Co., 9 Cir., 112 F.2d 648; Penn v. Robertson, 4 Cir., 115 F.2d 167, 174-175. See also Safety Tube Corp. v. Commissioner, 6 Cir., 168 F.2d 787, 790-791.

These rulings result logically from the recognized and settled principle that the Federal income tax system is based on an annual accounting, which requires the determination of income at the close of the taxable year without regard to the effect of subsequent events. Burnet v. Sanford & Brooks Co., 282 U.S. 359, at page 365, 51 S.Ct. 150, at page 152, 75 L.Ed. 383, in which the Court stated—"It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation." In Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337, the Court referred to a number of its prior decisions in which the rule had been applied, and in applying it in that case restated the rule in the following language: "The federal income tax system is based on an annual accounting. Under that law the question whether taxable profits have been made is determined annually by the result of the operations of the year." 304 U.S. at page 275, 58 S.Ct. at page 928. It is accordingly settled in the Federal income tax field that the tax on income actually received in a given year may not be withheld because the particular transaction from which such income flowed has not been completed in that year and losses may thereafter occur in a subsequent year.

Appellants contend that this long established rule was modified by the Supreme Court in Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, 166 A.L.R. 884, in which case the Court held that embezzled money did not constitute taxable income to the embezzler. In that case the Court stated that in order for there to be a taxable gain there must be (1) the presence of a claim of right to the alleged gain and (2) the absence of a definite unconditional obligation to repay

or return that which would otherwise constitute a gain. The Court stated that taxable income does not accrue from the mere receipt of property or money which one is obliged to return or repay to the rightful owner as in the case of a loan or credit. It held that the taxpayer in embezzling the money received it without any semblance of a bona fide claim of right, as he was at all times under an unqualified duty and obligation to repay the money to his employer, that the debtor-creditor relationship was definite and unconditional, and that all right, title and interest in the money rested with the employer. Appellants claim that the present case involves the same situation in that the employee claimed no right to the excess bonus payment made to him, that the debtor-creditor relationship arose by reason of a payment under a mutual mistake of fact, and such relationship was a definite and unconditional one. We believe this contention overlooks the material fact that the overpayment to the employee in 1942 was not discovered until 1944 with the result that the debtor-creditor relationship, although definite and unconditional in 1944, was not recognized or even claimed in 1942. The evidence is uncontradicted that when Haberkorn received the money in 1942 he considered it his own with the right in him to use it and spend it as he saw fit. The title to the money so received passed at that time from the employer to the employee. Subsequent developments in a later year gave rise to the obligation to repay it. We believe that the relationship between Haberkorn and the Company in 1942 was accordingly materially different from the relationship between Wilcox and his employer at the time when the money was embezzled. The receipt of the money by the embezzler and the obligation to return it occurred simultaneously. The net assets of the embezzler in that particular year were not increased by his embezzlement of the money. In the present case, at the end of 1942 Haberkorn had possession, title and unrestricted use of the money, and was claiming it and treating it as his own. There was not even any

pending or ascertained claim against it. In each of the cases of St. Regis Paper Co. v. Higgins, supra, Greenfield v. Commissioner, supra, Akers v. Scofield, supra, and Fleischer v. Commissioner, supra, the Court similarly pointed out how the Wilcox ruling was not applicable. The Wilcox opinion does not purport to overrule the established principle applied in North American Oil Consolidated v. Burnet. It was decided upon the particular facts involved, which in the Court's opinion made the usual rule inapplicable.

Nor was the general rule, recognized in this Circuit by our rulings in the cases hereinabove referred to, changed by our decision in Knight Newspapers v. Commissioner, 6 Cir., 143 F.2d 1007, 154 A.L.R. 1267. That case involved a personal holding company surtax where an offsetting deduction in a later year was not provided for. The income which the Commissioner attempted to make subject to the tax was never in fact received by the taxpayer, no claim of right was ever asserted by it and, as pointed out by the opinion in differentiating the cases, no economic gain resulted to the taxpayer stockholder. In that case we applied the theory of a constructive trust in order to avoid a harsh and unjust tax resulting from the combination of those facts. The facts in the present case do not justify any such departure from the general rule.

We recognize that there is authority to the contrary, particularly the two cases from the Court of Claims of Greenwald v. United States, 57 F.Supp. 569, 102 Ct.Cl. 272, and Gargaro v. United States, 109 Ct. Cl. 528, 73 F.Supp. 973. In the Gargaro case the taxpayer's liability to make a refund arose out of contract renegotiation proceedings instituted in a subsequent year and the ruling is in direct conflict with the previous rulings of this Court hereinabove referred to. The Greenwald case involves facts very similar to those in the present case, but appears to us to be against the great weight of authority.

The judgment of the District Court is affirmed.