**LEWIS v. UNITED STATES.**

No. 48903.

United States Court of Claims.

July 10, 1950.

Whitaker, J., dissented.

---

This case having been considered by the Court of Claims, the court, upon the evidence and the report of a commissioner, makes the following

Special Findings of Fact.

1. The plaintiff is a citizen of the United States and is a resident of the village of Oak Park, county of Cook and State of Illinois.

2. On or shortly prior to March 15, 1945, plaintiff filed with the Collector of Internal Revenue at Chicago, Illinois, his income tax return for the calendar year 1944, which return showed a taxable income for the year 1944 of $37,472.30, and a total income tax of $16,259.37. The tax was paid to the Collector of Internal Revenue as follows:

Withheld from plaintiff's compensation by Accurate Spring Manufacturing Co. during the year 1944, the aggregate sum of ...................... $ 7,135.20

Payments made on plaintiff's declaration and amended declarations of estimated tax for 1944 as follows:

On or prior to March 15, 1944 .................. 1,117.72

On or prior to June 15, 1944 2,294.78

On or prior to September 15, 1944 .................. 1,706.25

On or prior to January 15, 1945 .................. 4,005.42

Total .............. 16,259.37

3. On or about November 7, 1945, plaintiff filed with the Collector of Internal Revenue at Chicago, Illinois, an amended income tax return for the year 1944, which showed plaintiff's taxable income for 1944 as $40,177.62, and a total income tax of $18,098.99; and plaintiff paid therewith the sum of $1,839.62, being the balance due after crediting the sum of $16,259.37, the amount theretofore paid. By reason of the late payment of the sum of $1,839.62, the Collector of Internal Revenue assessed against plaintiff, as interest, the sum of $71.34, which sum was paid to the Collector of Internal Revenue on October 18, 1946.

4. Plaintiff was during the entire calendar year 1944, and for some years prior thereto, vice president, a member of the Board of Directors, and general manager of Accurate Spring Manufacturing Co., sometimes hereinafter called the "company". During 1944 he was in active charge of the entire operation of the company and, among other things, he did all the hiring and discharging, executed all the contracts, signed checks along with the individual who was the bookkeeper and assistant treasurer of the company, and directed the policies of the company. The president of the company, Frank D. Weber, was in Florida during the year 1944, and during no time in that year participated in the conduct of the business of the company other than by one or two telephone conversations with plaintiff and one or two meetings with plaintiff, once in New York City and once in Ashland, North Carolina.

5. In December 1938 plaintiff had been selected by the president of the company to be the general manager effective January 1, 1939. It was then agreed between plaintiff and the president that in addition to a stated salary, plaintiff was to receive a bonus of 10 percent of the net profits of the company before deduction for taxes. For the years 1939 and 1940 plaintiff was paid on that basis. Some time late in 1941 the president and plaintiff discussed the matter of plaintiff's bonus and the amount of compensation which he would receive on the existing basis due to the large increase in the company's profits from its increased business. It was decided, however, that no change would be made until after the profits for 1941 had been determined.

Early in 1942, after the profits for 1941 had been determined, plaintiff was presented with a statement showing the bonuses to be paid him, based on computations of the bonus both before and after deduction for taxes. Plaintiff agreed to accept for that year the bonus computed after deduction for taxes, and plaintiff was paid on that basis for 1941. Without further agreement between plaintiff and the president of the company, the compensation for the years 1942 and 1943 was likewise paid on the basis of the computation after deduction for taxes.

6. For the year 1944, without further agreement between plaintiff and the company, plaintiff directed payment to himself of a bonus on the basis of a computation on profits before deduction for taxes. On this basis the bonus paid to plaintiff was $21,924. Plaintiff at the time believed that that was the agreement upon which he was entitled to have his bonus computed, notwithstanding the acceptance by him of the bonus for 1941, 1942, and 1943 on the basis of a computation after deduction for taxes.

7. The company, in its income tax return for 1944 filed in March 1945, deducted as a part of the compensation paid to officers the sum of $21,924 as paid to plaintiff.

The company's tax was computed and paid accordingly. Later in 1945 the company filed an amended return in which it deducted as bonus compensation to plaintiff the sum of $11,067.94, instead of the $21,924 deducted in its original return. The additional tax based on the recomputation was paid by the company.

8. Some time after the company's return for 1944 had been filed, plaintiff was discharged from his position with the company. Following his discharge, plaintiff brought suit against the company, claiming, among other things, that by reason of deductions of improper items as expense, the profits before taxes were stated too low and that a larger bonus should have been paid to him for 1944. The company filed a counterclaim, claiming, among other things, improper action on the part of plaintiff in directing payment to himself of a bonus computed on the profits before taxes, and that thereby plaintiff received as a bonus $21,924 instead of $11,067.94, which was the correct amount computed after deduction for taxes. At the trial plaintiff testified that the agreement was to pay a bonus based on profits before taxes.

On December 3, 1946, judgment was entered as of November 15, 1946. The court found that the agreement for 1944 was that the bonus should be computed on the profits after deduction for taxes and that plaintiff erroneously and mistakenly believed and understood that the bonus was to be computed before deduction of taxes, and that by virtue of this mistake plaintiff received for the year 1944 the sum of $10,856.06 in excess of the amount to which he was entitled under the agreement as found by the court. Judgment was for the company in an amount which included the indicated excess of the bonus payment.

9. Plaintiff's taxable income for 1944 as shown on his amended return for that year, filed on November 7, 1945, was $40,177.62, and this sum included the sum of $21,924 as plaintiff's bonus from Accurate Spring Manufacturing Co. for 1944, based upon a percentage of the net profits.

10. Excluding from said taxable income the sum of $10,856.06, which is the amount that the Circuit Court of Cook County, Illinois, decreed was improperly paid to plaintiff, and which he repaid to Accurate Spring Manufacturing Co. in 1946, the plaintiff's taxable income for 1944 would be $29,321.56.

11. Based on a net income of $29,321.56 for 1944, plaintiff's tax on his 1944 income would be $10,953.17, which sum is $7,145.82 less than the tax which was paid by plaintiff, not counting the sum of $71.34 interest paid by plaintiff because of the late payment of the tax. The sum of the two amounts is $7,217.16.

12. On March 25, 1947, plaintiff filed with the Collector of Internal Revenue at Chicago, Illinois, a claim for refund of income taxes for the calendar year 1944, and interest and penalty on part thereof, in the amount of $7,217.16, based on the facts hereinbefore set forth.

Thereafter, and on or about October 3, 1948, plaintiff received by registered mail a notice from the Commissioner of Internal Revenue, dated September 28, 1948, advising him of the disallowance in full of the said claim for refund.

Upon the foregoing special findings of fact, which are made a part of the judgment herein, the court concludes, as a matter of law, that plaintiff is entitled to recover, and it is adjudged and ordered that he recover of and from the United States seven thousand two hundred and seventeen dollars and sixteen cents ($7,217.16), with interest as provided by law.

Arthur C. Chapman, Chicago, Ill., for the plaintiff. David & Fainman, Chicago, Ill., were on the brief.

Joseph H. Sheppard, Washington, D. C., with whom was Assistant Attorney General Theron Lamar Caudle, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff sues to recover Federal income taxes paid by him on his income for the year 1944. He says that he paid more than he owed, and if he did he is entitled to recover the excess, since he filed a timely claim for refund which was disallowed.

This is another case of a bonus paid to an officer of a corporation, a part of which bonus was, after the taxable year in question, repaid to the corporation because it was found that the bonus paid was larger than the officer was entitled to.

Beginning January 1, 1939, the plaintiff was the general manager of the Accurate Spring Manufacturing Company. His agreed compensation was to be a salary plus ten percent of the profits of the company before the deduction of taxes. He was so paid for the years 1939 and 1940. Late in 1941, the company's business and profits having greatly increased, the president of the company raised with the plaintiff the question of whether his compensation was not too large. It was agreed, however, that no change would be made until after the profits for 1941 had been determined. After that was done, the plaintiff agreed that his bonus for 1941 should be computed on net profits after the deduction of taxes.

No further discussion or agreement having taken place, the plaintiff's bonuses for the years 1942 and 1943 were computed on net profits after taxes. For the year 1944, however, the plaintiff, as the executive manager of the company, directed payment to himself of a bonus computed on profits before taxes. On this basis, he received a bonus of $21,924. The commissioner of this court found that the plaintiff at the time believed that he was entitled to be paid on that basis. The Government took no exception to that finding, and we have made a finding to the same effect.

The plaintiff included the bonus of $21,-924 in his income tax return for 1944, and paid the tax on it. The company in its return deducted the $21,924 as a business expense. In 1945 the company discharged the plaintiff, and he sued the company in an Illinois court, alleging that he was entitled to a larger bonus than he had received for 1944, because the company had deducted improper items as expenses, thus reducing its net profits and the plaintiff's bonus. The company filed a counterclaim in the plaintiff's suit, asserting that the plaintiff had been overpaid, since his bonus should have been computed

only upon profits after taxes. The Illinois court held for the company and required the plaintiff to repay to the company the amount by which the bonus received by him exceeded a bonus computed on profits after taxes. The excess was $10,856.06. The court found, as we have found, that the plaintiff mistakenly believed that the agreement between him and the company was that his bonus should be computed upon profits before taxes, but that in fact the agreement was that it should be computed on profits after taxes.

The plaintiff repaid the $10,856.06 to the company. The company filed an amended income tax return for 1944 in which it reduced its deduction and paid its tax on the amount repaid to it by the plaintiff. The plaintiff filed a claim for refund seeking the return of the tax paid by him on the $10,856.06 which he had been required to return to the company.

This court has held, in two recent cases, that when a taxpayer receives money which he supposes he is entitled to keep, and pays income tax on it, but later learns that he was mistaken in thinking he was entitled to keep it, and pays it back, he is entitled to a refund from the Government of the tax paid on it. Greenwald v. United States, 57 F.Supp. 569, 102 Ct.Cl. 272; Gargaro v. United States, 73 F.Supp. 973, 109 Ct.Cl. 528. Our reasons for so holding were stated at length in our opinions in those cases, and will not be repeated here. This case being in all essential respects like the two cases formerly decided, we decide it the same way.

The Government urges, as it did in the former cases, that the "claim of right" doctrine stated by the Supreme Court in North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 615, 76 L.Ed. 1197, is a bar to recovery by the taxpayer in cases of this kind. We observe again that the Supreme Court language relied on by the Government was *obiter*. The taxpayer in the American Oil case received the money in 1917, and never paid it back. There were five years of litigation during which its right to the money was disputed, but it won the litigation and kept the money. The court's statement as

to what would have been the result if the taxpayer had lost the litigation was, therefore, unnecessary to its decision. We are impressed by the recent observation of the Supreme Court in the case of Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 408, 66 S.Ct. 546, 549, 90 L.Ed. 752, 166 A.L.R. 884, that—

"For present purposes, however, it is enough to note that a taxable gain is conditioned upon (1) the presence of a claim of right to the alleged gain and (2) the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain."

The Wilcox case concerned the taxability of an embezzler upon the proceeds of his crime. His duty to repay would certainly not lose its quality of being "a definite, unconditional obligation" merely because at first he denied his crime and claimed that the money taken was his own, and persisted in that claim until he was convicted of the embezzlement. And the duty to repay of one civilly indebted because he had received money by mistake is no less "a definite, unconditional obligation" because he refuses to recognize the obligation until the contract in connection with which he mistakenly received the money has been interpreted and enforced by adjudication.

We think also that the Supreme Court's decision in Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 309, 78 L.Ed. 634, also subsequent to the North American Oil case, supra, has a bearing upon our question. In that case the beneficiaries of a trust had been paid the entire income of the trust in the taxable year, but later the State court having jurisdiction over the trust determined that the trustee should not have distributed the entire income, but should have withheld and retained for remaindermen a certain amount for depreciation. The State court ordered the beneficiaries to repay the excess amounts to the trustee. They complied with this order, not by repaying the amounts, but by giving their non-interest bearing promissory notes to the presumptive remaindermen, payable at the time the remainders should vest in possession. The Supreme Court held that

the beneficiaries were not taxable upon the amounts paid them in excess of what should have been paid them in the proper administration of the trust.

In the Freuler case the applicable statute was Section 219 (d) of the Revenue Act of 1921, 42 Stat. 246, which said:

"(d). In cases under paragraph (4) of subdivision (a) * * * the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not. * * *"

The Supreme Court held that the State court's decree, made many years subsequent to the taxable year and the actual distribution of the income, was the "order governing the distribution" referred to in Section 219(d) and that therefore only so much of the income actually distributed as was lawfully "distributable" in view of that subsequent order, was taxable to the beneficiaries. We recognize, of course, that the Freuler case involved a special section of the Revenue Act, which had its own wording. The use in that section of the word "distributable" would seem to be accounted for by the fact that Congress intended to tax to beneficiaries money which was in fact available or owing to them by their trustees, even before it had actually been paid over to them. The fact that the court so interpreted the statute as to make taxability depend upon the outcome of litigation as to whether the beneficiaries actually receiving the income were legally entitled to keep it or not seems to us to discount very heavily the idea that the finances of the nation would be thrown into disorder if the Government were allowed to tax as income only that which is, in fact, income to the taxpayer, and not that which only seems to be income because he is mistaken as to his right to keep it. We remind, however, that in the instant case, as also in the Greenwald and Gargaro cases, supra, the taxpayer, having received the income, paid his tax, and did not ask the Government to wait

for its revenue until he had completed his litigation or resolved his question otherwise. In all these cases the naked question has been whether the Government should keep money paid to it upon the mistaken assumption that the citizen had taxable income, when in truth he did not have the income, since he was under a legal obligation to return the money to his employer.

We are aware that the United States Court of Appeals for the Sixth Circuit has, upon similar facts, reached a contrary conclusion. Haberkorn v. United States, 173 F.2d 587. We adhere, however, to the view expressed in our former decisions.

The plaintiff is entitled to recover $7,-217.16 with interest according to law.

It is so ordered.

JONES, Chief Judge, and HOWELL and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

When this case was presented on oral argument I gained the impression, both from the statements of counsel for the plaintiff and for the defendant, that plaintiff and the company of which he was general manager had not acted under any misapprehension as to what were the facts governing their rights. I gained the impression that plaintiff had caused the company to pay him his bonus, based upon the company's profits before deduction of taxes, although he was fully aware that he was only entitled to a bonus on profits after deduction of taxes. But, apparently, I was mistaken.

The Commissioner of this court has found that when plaintiff directed the payment to himself of the bonus, computed on income before taxes, he believed that under his agreement with the company he was entitled thereto. Defendant took no exception to this finding. Plaintiff's exception only accentuates the fact that plaintiff honestly believed that he was entitled to have it computed on this basis.

Plaintiff, after his discharge as manager, brought suit against his company for an additional amount to which he said he was entitled as a bonus under his agreement,

and in his testimony in this suit he stated the agreement between him and the company was that his bonus should be computed on profits before taxes. The Circuit Court for Cook County, Illinois, where the suit was brought, held that plaintiff had believed that he was entitled to a bonus computed on this basis, but that this belief was erroneous.

This court has concurred in these findings.

This case, therefore, does not come within the rule of Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, 166 A.L.R. 884, where it was held that funds embezzled were not income to the embezzler, because he did not claim the funds as of right, thus distinguishing the case of North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S. Ct. 613, 76 L.Ed. 1197. In the case at bar this plaintiff, according to the findings, did honestly claim that he was entitled to the bonus paid him. He claimed it as of right.

Not coming within Commissioner of Internal Revenue v. Wilcox, supra, it would appear that the case comes within the rule laid down in the North American Oil Consolidated case, supra. In that case, and in numerous others, it was held that money received under a claim of right is income in the year received, although the recipient was mistaken in his claim of right, and later had to return the money. See, e. g., C. I. R. v. Alamitos Land Co., 9 Cir., 112 F.2d 648; Penn v. Robertson, 4 Cir., 115 F.2d 167; National City Bank of New York v. Helvering, 2 Cir., 98 F.2d 93; Saunders v. Commissioner of I. R., 10 Cir., 101 F.2d 407; Haberkorn v. United States, 6 Cir., 173 F.2d 587.

This court in a per curiam opinion in Schramm v. United States, 36 F.Supp. 1021, 93 Ct.Cl. 181, adhered to this rule.

But it is said that in Greenwald v. United States, 57 F.Supp. 973, 102 Ct.Cl. 272, we held that money received under a mistake of fact was not income to the recipient, and that under this rule the excess bonus received by plaintiff was not income to him. In the case relied upon both the corpora-

tion and its officer were misled as to the corporation's income, due to falsification of the books by the company's auditor. Both parties were mistaken as to the fact of the amount of the company's income.

Here, plaintiff and the president of his company had a conversation in 1941 as to the basis for the computation of plaintiff's bonus. As a result of this conversation the president believed that the agreement was that plaintiff's bonus from then on would be computed on profits after taxes had been deducted. Plaintiff, however, was under a different impression, it seems. He thought the agreement was not intended to apply indefinitely, but that the former agreement, that it should be computed on profits before taxes had been deducted, would be restored at some later time, and that in 1944 he thought the year had arrived for this former agreement to be restored.

This falls far short of a mutual mistake of fact sufficient to set aside or reform a contract. Whatever mistake there may have been, it certainly was not mutual.

The situation was no different from that which gives rise to innumerable law suits: one party says the agreement was one thing, and the other party says it was another.

It seems impossible to me to bring this case within the decision in the Greenwald case, supra.

Nor can it be brought within the decision in Gargaro v. United States, 73 F.Supp. 973, 109 Ct.Cl. 528. The basis of that decision was that both parties thought the corporation's income was a certain amount, whereas it turned out to be a smaller amount. Here there was no mutual mistake of fact; instead there was a dispute as to what the facts were.

I am of opinion this case comes within the rule of the North American Oil Consolidated case, and does not come within any exception to that rule, nor, under the findings of fact, within any exception that should be made to that rule. Under the findings plaintiff claimed the income, honestly believing he was entitled to it, and he retained it, until, in a later year, he was forced by court order to return it. In such case he is liable for the taxes incident to it in the year received. See Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337; Burnet v. Sandford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; Security Flour Mills Co. v. Commissioner, of Int. Rev., 321 U.S. 281, 286–287, 64 S.Ct. 596, 88 L.Ed. 725.

I must respectfully dissent.