**WELLS et ux. v. UNITED STATES.**
**No. 45830.**

Court of Claims.
March 4, 1946.

Clarence F. Rothenburg, of Washington, D. C. (Hamel, Park & Saunders, of Washington, D. C., on the brief), for plaintiffs.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges

LITTLETON, Judge.

Plaintiffs filed a joint income tax return for the calendar year 1934. They sue to recover an alleged overpayment in tax of $7,654.38, with interest, for that year. A refund claim was filed and rejected. The question presented is whether the amount of $13,305.58, representing a portion of an amount of $45,000 advanced to plaintiff, Arthur H. Wells, under the circumstances set forth and described in the findings, was taxable income for 1934.

For many years prior to 1930 Wells had been in the employ of the incorporated firm which, at that time, was known as John Griffiths & Son Construction Company. The corporation, which was engaged in the general construction business, was owned by John Griffiths and his son. Griffiths had carried on this business continuously since 1873. Wells has continuously remained in the employ of the company and has been vice-president of the corporation for the last several years. For sometime prior to May 19, 1930, Wells had an employment contract with John Griffiths & Son Construction Company, hereinafter referred to as "Griffiths," which, among other things, provided that Wells should receive seven percent of the net profits of the business as a part of his compensation payable annually.

On May 19, 1930, Wells and Griffiths entered into a new written contract which, so far as here material, provided as follows:

"1. It is agreed that the employee shall continue in the exclusive service and employment of the employer for a period to expire on December 31, 1934, in the capacity of general superintendent and manager of said business, subject to the direction and control of the proper officers of the employer; and the employee agrees that he will at all times diligently engage in the performance of said duties and will perform

them to the greatest advantage and to the satisfaction of the employer.

"2. In consideration of the foregoing undertaking on the part of the employee, and the faithful performance thereof, the employer agrees to pay, or cause to be paid, to the employee during said period, in compensation for his services, to be rendered as above set forth, from time to time as the same are rendered in a satisfactory manner to said employer, compensation determined as follows:

"a. A salary to the employee at the rate of $10,000.00 per annum, payable in monthly installments;

"b. An allowance for personal expenses which will be incurred in the course of his employment, at the rate of $1,500.00 per year, payable in monthly installments.

"c. Annually, at the time of each annual settlement date, for and during the term of said agreement, a sum of money equal to 15% of the net profits, computed upon business completed in each year of said term, to be ascertained as hereinafter set forth.

"3. For the purpose of this agreement the net profits of the employer for each year shall be ascertained by deducting, from the gross amount received on contracts completed and paid for in said year, all the expenses of conducting the employer's said business, including salaries and all other compensation paid to the employee (but not the proportion of the employee's compensation nor the compensation of George W. Griffiths which is to be based on a percentage of net profits), interest, taxes (as hereinafter set forth), losses, and expenses of every sort, also including the cost of maintaining the plant, equipment and machinery used by the employer in its business in good condition and adequate for the transaction of its business, whether by replacement or addition, any increase in the value of said plant by reason of replacement or addition to be the sole property of the employer. Except as herein specifically provided to the contrary, the employer's profits for the purposes hereof shall not include interest on funds on hand or from securities owned or other income from sources other than construction contracts. However, rental of equipment shall be included in profits. If such rental be for the use of equipment by the employer in its own contracts, it shall be considered part of the proceeds of or profits of such contracts, and included in the settlement following their completion.

If the rental be paid for the use of equipment by others, it shall be treated as profits when received by the employer.

* * * * * *

"5. It is agreed that the percentage upon the net profits which is above provided to constitute part of the employee's compensation hereunder shall be determined only upon the annual statement hereinafter provided for, and the amount thereof shall be paid only at the annual settlement date or as soon thereafter as the correct amount thereof may be ascertained; and said amount shall be based only upon the amount of net profits actually realized and collected upon completed contracts, after paying or providing for all outstanding and contingent liabilities and losses incurred in said business, and after providing adequate funds to provide for the completion of any work or the discharge of any liabilities incurred in connection with the contracts the profits from which are considered in determining said net profits. In no event shall a statement of said profits be made, or a settlement basis thereon be required, oftener than once a year and then only at the annual settlement day. No sum shall be construed to be profits unless the same has been actually collected and received by the employer and shown to be such by such annual statement, nor shall any profits made in the letting of subcontracts be construed as profits available upon such annual settlement unless the work to be done under the same has been done and the amount due thereon collected.

* * * * * *

"7. Inasmuch as the employee's contract heretofore in force has called for 7% profits instead of 15% provided for in Clause c. of Paragraph 2, his participation in the profit of such contracts as are partially completed at the beginning of the term hereof shall be determined as follows:

"a. He shall receive 7% of a percentage of the profits on each such contract equal to the percentage (based on gross cost) of such contract which was completed on May 17, 1930.

"b. He shall receive 15% of the remainder of said profits.

"It is further agreed that the employee shall be entitled to share in the profits of any contract which shall be in the course of performance at the time of the expiration of this agreement to the extent of 15% of a portion of the entire profits realized from such contract representing the same

proportion thereof as the portion of the work done under said contract up to the date of the expiration hereof shall represent of the entire work to be done under such contract. Nothing in this paragraph contained shall be construed as requiring the employer at any time to make a settlement with the employee and pay him compensation on account of the profits realized on any contract until the next annual settlement day after the full completion of said contract and the collection of the employer's full compensation therefor. Neither shall this paragraph be construed as indicating an intention of the parties hereto that this contract shall not be renewed or extended after the expiration of the specified term hereinbefore named.

\* \* \* \* \* \*

"9. The employer agrees that it will keep proper books of account showing its entire business in which entries shall be made of all moneys received and expended in the same and of all debts due and moneys owing by it and all matters relating to its business usually or properly entered in books of account, and that on the last day of each calendar year during the term of this contract, which day is herein referred to as the annual settlement day, a general accounting shall be made and taken of its business for the preceding year; and, immediately after the same shall have been reduced to permanent form, said general accounting shall be signed by the employer and by the employee and remain in the custody of the employer. After such signatures shall be made to such accounting by the parties hereto they shall be bound by the same, except that if a manifest error be found therein by either party hereto of which the other party has notice in writing within thirty days after such account shall have been signed, said error shall be rectified. Otherwise the said account shall be final and conclusive upon the parties hereto and binding upon each of them.

"10. It is agreed that in the event that the business of the employer during any year of the term hereof shall show a net loss instead of a profit, the employee shall not be liable to contribute any portion of said loss but his compensation shall be limited to his salary and expense account provided for in paragraph 2 hereof."

Wells had been ill during 1934 and his physician advised him to acquire a home in the suburbs of Chicago for purposes of health. In order to do this, Wells needed some additional money. Prior to this time Wells had asked for and had been given by Griffiths from time to time advancements of money against the commissions which Wells would probably become entitled to receive, which advances, however, were pursuant to the agreement and the understanding between the parties, always subject to adjustment as of the end of the calendar year in which made to accord with whatever amount of compensation, by way of a share in the net profits, might finally be determined to be due Wells for such year in accordance with the terms and conditions of the existing agreement between the parties. Compensation by way of commission was due annually at the end of the year and was not payable until finally determined on accounting after the end of the year. In other words, if an amount advanced by Griffiths during any year should be found, as of the end of such year, on a settlement under the agreement to be in excess of the amount then determined to be due the excess would be returned by Wells and, if not in excess of the amount of commissions so determined to be due the amount advanced would be applied in the settlement against the amount so determined to be due.

Early in December 1934, preparatory to asking Griffiths for an advance prior to the settlement date, Wells made a tentative or rough estimate and computation of the amount of the commission that would probably be due him at the end of 1934 on the business done by the Griffiths Company during the year. In this computation he estimated an amount of $45,000 and requested the company to advance him this sum. His agreement calling for a percentage of net profits expired December 31, 1934, the last "settlement date," and there were a number of contingencies which the agreement required be taken into consideration at that time which Wells did not consider because he was only making an approximate estimate on the basis of known factors rather than on an accurate computation. Wells knew, as he testified in this case, that the requested advance was not a payment of compensation as such, and he did not request the advance under a claim of right to that amount of compensation because he had no right under the agreement to ask for payment as compensation until a final audit and determination of net profits, as of the settlement date, had been made and signed by the parties as provided in par. 9 of the agreement.

When Wells requested the advance of $45,000 the company's accountant made a tentative computation and estimate as to the probable net profits of Griffiths Company for 1934 in respect of which Wells would be entitled to receive, in the absence of contingencies or losses, 15 percent on final settlement as of the end of the year, and his estimate amounted to $93,673.69. Thereupon the company advanced Wells the $45,000 requested and gave him a check therefor on December 28, 1934. The proof shows that the Griffiths Company did not consider that it was paying this $45,000 to Wells under a claim of right thereto by him but gave the same to him as an advance, subject to adjustment on final determination as to the amount of net profits or losses of the business as of December 31, 1934.

Neither Wells nor the accountant in computing his estimate of profits on certain contracts took into consideration any profit or loss to be derived or sustained on a contract for construction work by the Griffiths Company on Twin Locks at Lock and Dam 26 on the Mississippi River at Alton, Illinois, sometimes referred to as the Alton Project, reserving this for later adjustment. Early in 1935 it developed that a large loss would be sustained on this project, and in 1936 the total loss of $1,100,000 was finally determined. About one-half, or $550,000 of this loss was applicable as a charge against the profits otherwise earned by the company for 1934. After considerable negotiations between Wells and the Griffiths Company as to the amount of loss and the portion chargeable to 1934, it was finally determined that on account of this loss Wells was due to return to the company $13,305.58 of the advance of $45,000 made to him in 1934. This was done in the years 1936 and 1937.

When the joint tax return was filed for 1934 Wells knew that some portion of the $45,000 advanced to him in 1934 would have to be returned to Griffiths, but since the excess of the amount advanced over the commission due and payable on the correct net profits for 1934 had not been determined he reported the entire amount as income with the intention of claiming a refund with respect to the tax paid on such excess.

Plaintiffs filed a claim for refund, which was rejected on the ground that the $45,000 had been paid to Wells as compensation which he received under a claim of right and that the amount, therefore, constituted taxable income for 1934. In support of that action counsel for defendant here rely upon the cases of Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725, and Jacobs v. Hoey, 2 Cir., 136 F.2d 954. We have studied the facts and opinions in those and other cases and conclude that the rules therein applied, in holding that the amounts there involved were income in the years in which paid and received, are not applicable under the facts and contract provisions present in this case.

All the evidence submitted shows that the $45,000 received by Wells in 1934 was an advance rather than the payment of compensation, as such, under a claim of right by Wells. Defendant has submitted no evidence to the contrary. The fact that Wells and the accountant, Wyland, made a tentative or rough calculation of the commission to which Wells would probably be entitled on the basis of the estimated profits from completed contracts, without consideration of other matters on what might happen in connection with other incompleted contracts, is not controlling as to whether the whole or any part of the $45,000 was compensation due Wells, or whether the whole or any part of the amount was taxable income for 1934. The intention of Wells and the Griffiths Company and the terms and conditions of the employment agreement of May 19, 1930, are the controlling factors. These show that the $45,000 was simply an advance subject to adjustment and repayment in whole or in part on final settlement as of December 31, 1934, and the estimates of probable net profits for 1934 had reference more to the matter of security for the advance than to the legal right of Wells to receive the amount at that time as compensation due him under the agreement of 1930. The employment agreement expressly provided that such compensation was due and payable annually when finally determined after the end of each year. Both Wells and Wyland miscalculated the probable net profits of Griffiths for 1934 by about $550,000 due to the loss of $1,100,000 sustained on the Alton Lock and Dam project, which loss the employment agreement of 1930 required be taken into consideration in determining the commission compensation due Wells for 1934. Neither party knew, when the computation of estimated profits on December 10 was made, what the true net

profits for the year 1934 would be and both Wells and Griffiths considered the $45,000 as an advance not under a claim of right but subject to adjustment on final settlement, as provided in pars. 3, 5, 7, 9, and 10 of the 1930 agreement hereinbefore quoted. Wells did not at any time claim the right to keep the whole of the $45,000 advance received in December 1934; he disagreed with Griffiths early in 1935 only with reference to the amount of the loss on the Alton project and the amount of such loss allocable against other profits of the company earned on other projects in 1934. The parties were never in disagreement about the fact that the $45,000 paid Wells in December 1934 was in fact only an advance.

On the facts and for the reasons hereinabove set forth, we hold that the amount of $13,305.58 in question was not taxable income to Wells in 1934, or in any other year, and the plaintiffs are, therefore, entitled to recover. However, the amount of judgment to which plaintiffs are entitled for principal and interest on account of the overpayment of tax for 1934 on said amount of $13,305.58 cannot now be determined in view of the fact, as set out in finding 20, that the taxes should be recomputed for 1936 and 1937 by restoring to taxable income for those years the amounts of $5,808.11 and $7,497.47, respectively, which plaintiffs deducted.

Judgment will be entered for the amount due for 1934 upon the filing by the parties of a computation or stipulation showing the overpayment for 1934, the credits due defendant for 1936 and 1937, and the net overpayment for 1934. It is so ordered.

WHALEY, Chief Justice, and JONES and WHITAKER, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.