**SOHIO CORPORATION et al. v. COMMIS-SIONER OF INTERNAL REVENUE.**

No. 9472.

United States Court of Appeals District of Columbia.

Argued June 4, 1947.

Decided July 28, 1947.

Mr. Milton E. Newcomer, of Cleveland, Ohio, for petitioners.

Mr. Newton K. Fox, Special Assistant to the Attorney General, with whom Mr. Sewall Key, Acting Assistant Attorney General, Mr. A. F. Prescott, Special Assistant to the Attorney General, and Mr. Harry Marselli, Special Assistant to the Attorney General, were on the brief, for respondent.

Mr. John P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Mr. John M. Morawski, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., also entered appearances for respondent.

Before STEPHENS, CLARK, and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

This is a federal income and excess profits tax case, before us upon a petition for review of a decision of The Tax Court of the

United States. Petitioner [1] is a corporation engaged in buying, selling and otherwise dealing in crude oil in the State of Illinois, among other places. It was not a producer of oil, in the transactions here involved. In 1941 the General Assembly of Illinois enacted a statute [2] imposing a tax upon producers of oil in the State at 3 per cent of the fair cash value of the oil at the well when and where produced. The act required every person accepting delivery of oil from the operator of a well in Illinois to collect the tax from the producer. It provided that such a receiver of oil should determine the actual cost of making the collection and deduct such cost, not to exceed 2 per cent of the amount so collected, from the tax collected by him. It required him to transmit the balance to the State.

Petitioner complied with the tax statute in 1941 and 1942. However, it and others promptly, in 1941, filed an action in the courts of Illinois, seeking to have the act declared invalid as unconstitutional. It recited the penalties provided in the act as the reason for its compliance with the statutory requirements. At the same time, it gave notice in writing to the producers, stating that the suit had been filed and that it was petitioner's opinion that the law would be declared unconstitutional and the taxes refunded. The Supreme Court of Illinois, in 1944, declared the act invalid.[3] Thereupon the State refunded the taxes to the petitioner, and the petitioner refunded them to the producers, including in the latter refunds the 2 per cent which had been retained by it for services.

The question in the case is whether the 2 per cent, which the petitioner deducted from the amounts collected by it as taxes and retained until the final refunds to the producers, was income to it. It included these amounts as income in its original federal returns, but when, by reason of a deficiency notice on other items, the returns were before the Tax Court, it claimed that these amounts were not properly included as income. The Tax Court, with five judges dissenting in three dissenting opinions, held for the Commissioner. The present petition for review followed, the jurisdiction of this court being by stipulation of the parties under the statute.[4]

The precise question to be decided is exceedingly narrow and concerns the nature of the 2 per cent of the oil tax; specifically, whether it was income to petitioner or not. It is agreed by the parties, and we therefore assume it as a fact, that the petitioner treated the full contract price of the oil as the cost of oil on its income tax returns and deducted that amount as the cost of goods sold. It is important to an understanding of the case to note that no question is raised as to the propriety of that deduction. The case must, therefore, be considered upon the assumption that the full contract cost of the oil was properly treated as cost of goods sold and so deducted on the federal income tax returns. That assumption being made, the state oil tax must necessarily be considered as having been collected from the producer by the purchaser of the oil, and not as having been merely retained by the purchaser out of the purchase price. In other words, the initial deduction of the full purchase price took that entire amount out of the accounts of the purchaser for income tax purposes; and the subsequent treatment by him of a portion of that amount must be upon the premise of a return of that portion to him, i.e., a collection by him. Upon that basis, the question is whether the disputed item is income vel non to him. The case has been so posed by the parties, and we therefore treat it so. A different question would be pre-

---

[1] Sohio Corporation was the taxpayer during the period in question, 1941 and 1942. As of January 1, 1944, it was merged into Sohio Producing Company. On January 4, 1944, the name of the continuing corporation was changed to Sohio Petroleum Company. That Company was made a joint petitioner throughout this proceeding, since it is the successor to the assets and liabilities of Sohio Corporation. "Petitioner" is used in this opinion to refer to both of the corporate parties.

[2] Ill.Rev.Stat.1943, c. 120, § 416.1 et seq.

[3] Ohio Oil Co. v. Wright, 386 Ill. 206, 53 N.E.2d 966.

[4] 26 U.S.C.A. Int.Rev.Code, § 1141(b) (2).

sented if the controversy concerned the propriety of the initial deduction of the full contract price of the oil.

■ Because the facts are somewhat complicated, a statement of the question in general terms appears confused. An illustration may serve to clarify it. Assume that petitioner purchased oil for $100,000 from a producer in Illinois. It would have treated the full $100,000 as cost of oil, but it would have actually paid the producer $97,000. Of the remaining $3,000, it transmitted to the State of Illinois 98 per cent or $2,940. No question is raised as to the proper treatment of that amount.[5] It retained the remaining $60, or 2 per cent of the tax, as reimbursement of collection expenses. Of that amount, it actually expended, let us assume, $15. No question is raised as to the proper treatment of that $15. The question in the case is whether the remaining $45 is income to the petitioner in the year in which the transaction of purchase occurred.[6] This is a clear-cut question of law which must be decided by the court.[7]

If the Illinois statute had been sustained as valid, the 2 per cent of the tax which went to petitioner to compensate it for its services in collecting the tax, would have been income to it as payment for services rendered the State. The question is whether it was income in view of the circumstances under which it was held by petitioner for a time and then refunded.

The Commissioner relies upon the well-established rule that since the federal income tax is premised upon an annual accounting period, when amounts are received as income under a claim of right and without restriction as to their disposition the taxpayer has received income, even though it be eventually established that he is not entitled to retain the money. The opinion of the Supreme Court in North American Oil v. Burnet[8] established that principle, and it has been followed in numerous cases.[9] But that rule does not answer the questions in this case. The questions here are whether the disputed items were received under a claim of right and, if not, whether they were income. We think that the correct answer to both questions is in the negative.

Petitioner at no time asserted a right to the amounts it temporarily retained. From the beginning it specifically denied the validity of its collection of the tax, making the denial both in its suit in the courts of Illinois and in its notices to the producers. Its action in collecting the tax and in retaining the 2 per cent of the amounts thus collected was alleged by it to have been solely because of the heavy penalties imposed by the State statute. In its complaint in the Circuit Court of Sangamon County, Illinois, it recited that the Director of the Department of Finance threatened to enforce the penalties in case the petitioner failed to collect the tax. This attitude of the petitioner toward the amounts involved was the opposite of the claim of right to those amounts. It was a specific denial of any right to them and a disavowal of any claim to them. Its retention of the sums was avowed by it to be under compulsion of the State of Illinois.

■ We are of the further opinion that under the foregoing circumstances the disputed items did not constitute income to

5 See Note, The Private Tax Collector—A New Fiduciary, 60 Harv.L.Rev. 786 (1947).

6 The question is the same whether the $60 be deemed to have been collected from the producer or to have been paid petitioner by the State.

7 Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

8 1932, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197.

9 Blum v. Helvering, 1934, 64 App.D. C. 78, 74 F.2d 482; Barker v. Magruder, 1938, 68 App.D.C. 211, 95 F.2d 122; Board v. Commissioner of Internal Revenue, 6 Cir., 1931, 51 F.2d 73, certiorari denied, 1931, 284 U.S. 658, 52 S. Ct. 35, 76 L.Ed. 557; Champlin v. Commissioner of Internal Revenue, 10 Cir., 1935, 78 F.2d 905; National City Bank of New York v. Helvering, 2 Cir., 1938, 98 F.2d 93; Griffin v. Smith, 7 Cir., 1939, 101 F.2d 348; Saunders v. Commissioner of Internal Revenue, 10 Cir., 1939, 101 F.2d 407; Commissioner of Internal Revenue v. Alamitos Land Co., 9 Cir., 1940, 112 F.2d 648, certiorari denied, 1940, 311 U.S. 679, 61 S.Ct. 46, 85 L.Ed. 437; Penn v. Robertson, 4 Cir., 1940, 115 F.2d 167.

petitioner. The statement of the Supreme Court in the North American Oil case, supra, that if a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income, clearly implies that if a taxpayer receives amounts without any claim of right and under compulsion of law to receive them, although over his objection, he has not received income; at least not unless his denials and protests are eventually overruled. If the Supreme Court had meant that the receipt of sums was income, whether or not under claim of right, the recitation of the qualifying phrase in the opinion was meaningless. Moreover, on reason, we do not think that when a taxpayer is compelled by a state authority, over his protest, to retain possession temporarily of funds, he can be charged with having income on that account. The cases of Dixie Pine Products Co. v. Commissioner [10] and Security Flour Mills Co. v. Commissioner [11] dealt with deductions from income and held that a taxpayer may not accrue an expense the liability for which is contingent and is contested by the taxpayer. The problem in the present case concerns income rather than a deduction, but we think that the same principle applies. If, as a matter of law, a deduction is not accruable if the liability is contingent and contested by the taxpayer, similarly income is not accruable if the right thereto is contingent, being denied and contested by the taxpayer. Commissioner v. Wilcox [12] concerned amounts which had been embezzled, and therefore was distinct from the present case on its facts, but in the course of the opinion the Court rec ted and relied upon the general principle that in the absence of a bona fide claim of right, income is not received. The dissent in that case rested upon the proposition that the embezzler had complete possession of the funds and exercised dominion over them to the extent of disposing of them, and that this disposition constituted enjoyment and use of the funds, an obvious economic value to the embezzler. Thus, the dissent would not dispute the application of the general principle of the majority to the case here at bar.

We do not intend this opinion to be broader than the case. We do not have a general question before us, but rather a specific set of circumstances. We hold that where a taxpayer was compelled by a state law, under threat of heavy penalties and over its formal and repeated protest, to withhold from its vendors portions of its contract purchase price, and promptly contested in the courts the compulsory withholding, it had not received income by reason of this withholding.

Reversed.

---

[10] 1944, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270.

[11] 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725.

[12] 1946, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, 166 A.L.R. 884.