**The MIDVALE COMPANY,**

v.

**THE UNITED STATES.**

No. 643.

United States Court of Claims.

Oct. 5, 1954.

Joseph H. Sheppard, Washington, D. C., for plaintiff. J. Marvin Haynes, N. Barr Miller, F. Eberhart Haynes, Oscar L. Tyree and Haynes & Miller, Washington, D. C., were on the briefs.

Edmund C. Grainger, Jr., Tuckahoe, N. Y., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiff, taxpayer, sues for $624,922.52, and interest provided by law, which amount represents excess profits taxes and deficiency interest paid by taxpayer for its taxable years 1940–1945, inclusive.[1] The defendant and taxpayer move for judgment on the pleadings and since matters outside of the pleadings have been presented they are treated as motions for summary judgment and will be disposed of accordingly. The sole issue presented in this case is whether or not excess profits under the Vinson-Trammell Parity Act, 48 Stat. 503, 505, as amended, 34 U.S.C.A. § 496, that were received by taxpayer during the base period years 1936–1939, inclusive, and repaid in subsequent years, should be excluded from income in the base period years in determining taxpayer's excess profits credit, which credit is to be employed in determining its excess profits tax for the years 1940–1945, inclusive.

The taxpayer was on a calendar year basis, filed its tax returns in accordance with the accrual method of accounting and reported income on its long-term contracts on the percentage of completion basis. During the years 1936–1939, inclusive (hereinafter referred to as the base period years), taxpayer performed contracts awarded by the United States Navy Department for the construction and manufacture of various heavy parts for naval vessels. These contracts were executed in accordance with the provisions of the Vinson-Trammel Act, supra (hereinafter referred to as the Vinson Act). The pertinent portions of the Vinson Act provide:

"Sec. 3 * * * *Provided,* That no contract shall be made by the Secretary of the Navy for the construction and/or manufacture of any complete naval vessel or aircraft, or any portion thereof, herein, heretofore, or hereafter authorized unless the contractor agrees—* * *

"(b) To pay into the Treasury profit, as hereinafter provided shall be determined by the Treasury Department, in excess of 10 per centum of the total contract prices, for the construction and/or manufacture of any complete naval vessel or portion hereof, * * * of such contracts within the scope of this section as are completed by the particular contracting party within the income taxable year * * *.

"(e) * * * The method of ascertaining the amount of excess profit to be paid into the Treasury shall be determined by the Secretary of the Treasury in agreement with the Secretary of the Navy and made available to the public. The method initially fixed upon shall be so determined on or before June 30, 1934: *Provided,* That in any case where an excess profit may be found to be owing to the United States in consequence hereof, the Secretary of the Treasury shall allow credit for any Federal income taxes paid or remaining to be paid upon the amount of such excess profit.[2] "

1. Such deficiencies, with interest thereon, insofar as they relate to the issue here presented were as follows:

| Year | Tax Deficiency | Interest |
|------|----------------|----------|
| 1940 | $48,354.13 | $25,465.40 |
| 1941 | 49,732.08 | 23,207.17 |
| 1942 | 96,027.64 | 40,837.61 |
| 1943 | 94,075.64 | 25,086.84 |
| 1944 | 99,302.07 | 11,615.62 |
| 1945 | 99,302.07 | 11,916.25 |

2. For the regulations promulgated pursuant to this Act see T. D. 4434, XIII–1 C. B. 540, which was later superseded by T. D. 4723, 1937–1 C. B. 519, as amended by T. D. 4741, 1937–1 C. B. 531, T. D. 4861, 1938–2 C. B. 480, and T. D. 4897, 1939–1 C. B. 404, T. D. 4906, 1939–2 C. B. 404.

The Navy Department paid taxpayer the full contract price for the contracts completed during the base period years unreduced by the excess profits. The taxpayer included in income and paid taxes on those amounts. The Vinson Act and the contracts required taxpayer to repay to the Treasury all profits over 10 per cent of the contract price. The excess profits less a credit for Federal income taxes paid by taxpayer on the sums were subsequently repaid to the Treasury. The taxpayer, employing the average base period net income method, in determining its excess profits credit under the Excess Profits Tax Act of 1940, as amended, 54 Stat. 975, as amended, 26 U.S.C. §§ 710–784, note 1946 ed. Repealed Nov. 8, 1945, 59 Stat. 568, used the full contract prices unreduced by the Vinson Act excess profits. The Commissioner of Internal Revenue assessed and collected deficiencies with interest, for the taxable years 1940–1945, inclusive, in the principal sum here sued for based on the ground that the Vinson Act excess profits should be excluded from income in the computation of taxpayer's excess profits credit. These and other relevant facts are graphically set forth below.[3] Timely claim for refund for these years was made, and denied.

The taxpayer employed the average base period net income method in determining its excess profits credit. Section 713(b) (1) (A) fixes the base period as years 1936, 1937, 1938 and 1939. The applicable portion of Section 711(b) (1) provided:

"General rule and adjustments. The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13(a) of such Act; and for any other taxable year beginning after De-

| | 1936 | 1937 | 1938 | 1939 |
|---|---|---|---|---|
| **3.** Normal-Tax or Special Class Net Income under Revenue Laws Applicable 1936–1939 ... | $1,507,693.83 | $1,940,007.91 | $1,916,440.91 | $3,526,426.48 |
| Less: Vinson Act Payments | 73,390.03 | 196,120.69 | 27,640.41 | 225,203.91 |
| Revised Normal-Tax or Special Class Net Income .............. | $1,434,303.80 | $1,743,887.22 | $1,888,800.50 | $3,301,222.57 |
| Less: Net Adjustments under Section 711(b).. | 14,729.58 | 1,185.00 | 600.00 | 1,084.06 |
| Excess Profits Net Income for Computing Excess Profit Credit under Section 713 as determined by the Commissioner ....... | $1,419,574.22 | $1,742,702.22 | $1,888,200.50 | $3,300,138.51 |

The above determined excess profits net income was applied by the Commissioner of Internal Revenue in computing taxpayer's excess profits credit under Section 713 of the Code for purposes of determining taxpayer's excess profits tax liability for the taxable years 1941–1945, inclusive. For the taxable year 1940 the Commissioner made the same computation except that he deducted from the foregoing excess profits net income, pursuant to Section 711 (a) (2) (C) of the Code, 54 Stat. 977, Repealed Sept. 20, 1941, 55 Stat. 701, the following income taxes for the base period years:

| Year | Amount |
|---|---|
| 1936 ..................................... | $232,637.57 |
| 1937 ..................................... | 274,173.19 |
| 1938 ..................................... | 332,645.75 |
| 1939 ..................................... | 584,060.79 |

cember 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14(a) of the applicable revenue law. In either case the following adjustments shall be made * * *." [Then followed nine adjustments.]

The taxpayer contends that its "normal-tax net income" and "special-class net income" for the base period years is the amount upon which it originally paid its income tax, which included the Vinson Act excess profits, and that the only adjustments to be made in ascertaining its "excess profits net income" are those specified in Section 711(b) (1); and since none of the adjustments encompass the Vinson Act excess profits the Commissioner's action was without authority and is invalid. The defendant contends that taxpayer's "normal-tax net income" and "special-class net income" for its base period years is not the amount upon which taxpayer originally paid its taxes, but rather is that amount less the Vinson Act excess profits because taxpayer was allowed a credit for the Federal taxes paid on the excess profits in those years, which in effect excluded them from the respective years.

The first question to be resolved is whether for purposes of Section 711(b) (1) the normal-tax and special-class net income for the base period years is that income originally reported on the return, or the corrected income as determined under the applicable law for those years. Section 711(b) (1) of the Code, Section 13(a) of the Revenue Act of 1936, 49 Stat. 1655, 26 U.S.C. § 13, Section 14(a) of the Revenue Act of 1938, 52 Stat. 456, 26 U.S.C. § 14, and of the 1939 Code resolve this issue. Section 711(b) (1) states that the "excess profits net income" shall be the "normal-tax net income, as defined in section 13(a)" of the 1936 Revenue Act and the "special-class net income, as defined in section 14(a) of the applicable revenue law." (Italics added.) Section 13(a) of the Revenue Act of 1936 provided: "As used in this title the term 'normal-tax net income' means the net income minus * * *"

certain adjustments not here material. Section 21 of that Act provided: " 'Net income' means the gross income computed under section 22, less the deductions allowed by section 23." Section 14(a) of the applicable revenue law, for present purposes, provided substantially the same thing.

It is therefore clear that the correct income for the base period years must be determined before the application of the Section 711(b) (1) adjustments in order to properly determine the "excess profits net income" from which the excess profits credit is computed. Thus the first issue in this case is refined to the question of what is the correct income for the base period years.

This brings us to the question of whether, when the Vinson Act excess profits are repaid to the Treasury, the allowance of the credit for Federal taxes paid on them results in a reduction or elimination *pro tanto* of the income for the years in which the profits were originally reported.

The defendant contends that the principles enunciated in Holmes Projector Co. v. United States, 105 F.Supp. 690, 123 Ct.Cl. 278, certiorari denied 344 U. S. 912, 73 S.Ct. 334, 97 L.Ed. 703, and Junior Toy Corp. v. United States, 116 F.Supp. 730, 126 Ct.Cl. 681, are dispositive of this issue. Those cases are not dispositive of the issue, although they do point the way. Those cases dealt with Section 3806 of the Internal Revenue Code, 26 U.S.C. § 3806, and the proper year for accrual of income from Government contracts that were subject to renegotiation under the Renegotiation Act, 56 Stat. 245, as amended, 50 U.S.C.A. Appendix, § 1191. The Vinson Act and the Renegotiation Act were enacted for the same general purpose and are similar in many respects.

The Vinson Act provides that: "the Secretary of the Treasury shall allow credit for any Federal income taxes paid or remaining to be paid upon the amount of such excess profit." The Renegotiation Act, as amended, 58 Stat. 83, pro-

vides: In determining the amount of any excessive profits to be eliminated hereunder "the Secretary shall allow the contractor or subcontractor credit for Federal income and excess profits taxes as provided in section 3806 of the Internal Revenue Code." The relevant portion of Section 3806 provides:

"(a) Reduction for prior taxable year. (1) Excessive profits eliminated for prior taxable year. In the case of contract with the United States * * * which is made by the taxpayer, if a renegotiation is made in respect of such contract or subcontract and an amount of excess profits received or accrued under such contract or subcontract for a taxable year (hereinafter referred to as 'prior taxable year') is eliminated and, in a taxable year ending after December 31, 1941, the taxpayer is required to pay or repay to the United States or any agency thereof the amount of excessive profits eliminated or the amount of excessive profits eliminated is applied as an offset against other amounts due the taxpayer, the part of the contract or subcontract price which was received or was accrued for the prior taxable year shall be reduced by the amount of excessive profits eliminated. * * *

"(b) Credit against repayment on account of renegotiation of allowance. (1) General rule. There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year * * * is decreased by reason of the application of paragraph (1) of subsection (a) * * *."

The Commissioner explained the use of the credit in I.T. 3611, C.B.1945, 978, which states:

"* * * the credit allowed against the amount of excessive profits, for Federal income tax purposes, including computation of

post-war refund of excess profits taxes under section 780 of the Code, is treated the same as if such credit were a refund of the taxes forming the basis of the credit. * * *"

It is clear from Section 3806 that the income for the prior year is retroactively reduced by the amount of excessive profits and the tax for that year is redetermined. It is also clear from I.T. 3611 that the credit is merely an administrative substitution for a refund. If a refund or its administrative substitute is allowed a taxpayer when excessive profits are repaid it follows that the net income for the prior year is reduced because it is the basis for the allowance of the refund or credit. Although Section 3806 and I. T. 3611 are not, as such, applicable to the years involved in this case, we said in Holmes Projector, and it was stated in the House Conference Report [4] accompanying the Revenue Act of 1942, 56 Stat. 798, which added Section 3806, that that section was substantially a codification of the prior position taken by the Commissioner of Internal Revenue.

Since the acts deal with the same subject and use substantially the same terminology we see no reason why the allowance of a credit for Federal taxes paid on excessive profits under the Vinson Act should not automatically reduce the prior year's income as it does in the case of the Renegotiation Act repayments, inasmuch as the reduction of the income in both cases is necessary to the determination of the credit and serves as the foundation for the credit.

Accordingly, we hold that the allowance of such a credit results in the reduction of the prior years' income upon which it is based. The taxpayer, in its argument that the credit under the Vinson Act is allowed as a matter of fairness and does not result in an adjustment or reduction of the income of the base period years, states that the Commissioner determined the amount of taxes paid on the excess profits in the base period years on the completed contract ba-

4. 77th Cong. 2d Sess., H.Rep. 2586, p. 74.

sis instead of on the percentage of completion basis. The latter was used for reporting the income in the base period years. If that be the case, the Commissioner is in error in this respect because the amount of tax that should be allowed as a credit is the actual tax paid on the excess profits. Since taxpayer employed the percentage of completion method of reporting income on its long-term contracts it would be necessary to allocate the excess profits over the years that the income and expenses were reported on the contracts in order to ascertain the proper income for those years.

■ Aside from the credit provision in the Vinson Act we believe that taxpayer's correct normal-tax net income for the years 1936 and 1937 and special-class net income for the years 1938 and 1939 should not include the excess profits required to be repaid by the Vinson Act. The taxpayer did not have a claim of right to the excess profits and was under a contractual and statutory obligation, which was unconditional and unqualified from the time it received the money, to repay all profit over 10 per cent of the contract price. It is settled law that income

"* * * is conditioned upon (1) the presence of a claim of right to the alleged gain and (2) the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain. Without some bona fide legal or equitable claim, even though it be contingent or contested in nature, the taxpayer cannot be said to have received any gain or profit within the reach of Section 22(a). See North American Oil [Consolidated] v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197. Nor can taxable income accrue from the mere receipt of property or money which one is obliged to return or repay to the rightful owner, as in the case of a loan or credit. * * * the bare receipt of property or mon-

ey wholly belonging to another lacks the essential characteristics of a gain or profit within the meaning of Section 22(a)." Commissioner v. Wilcox, 327 U.S. 404, 408, 66 S.Ct. 546, 549, 90 L.Ed. 752.

See also Bates Motor Transport Lines Inc. v. Commissioner, 17 T.C. 151, affirmed 7 Cir., 200 F.2d 20. This doctrine was unimpaired by Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833.

It is true that as a practical matter and for administrative convenience the contractors are paid the full contract price and include the full amount in gross income unless the repayments occur in the same taxable year. They file reports on the cost of performing the contract, repay the profit over 10 per cent of the contract price and are allowed a credit for the Federal taxes paid by reason of its inclusion in income in the prior year, which as we have held eliminates it from that year.[5] This, however, does not devitalize the efficacy of the claim of right doctrine.

In view of our decision, that the correct income for the base period years is to be employed in determining taxpayer's excess profits net income under Section 711(b) (1), and that the correct income for those years does not include the Vinson Act excess profits, it is unnecessary to answer taxpayer's second contention that the adjustments under Section 711 (b) (1) do not provide for the exclusion of the Vinson Act excess profits.

■ We conclude that the Vinson Act excess profits should be excluded from income in the base period years in determining taxpayer's excess profits credit. However, because of the unsettled issue of whether the Commissioner of Internal Revenue properly allocated the excess profits over the years that the income and expenses on the particular contracts were reported, judgment will be suspended pending the filing of a stipulation showing the correct computation of the income for the base period years

5. See footnote 2, supra.

as indicated in this opinion, or in the event the parties are unable to stipulate this issue within 45 days the case will be sent to a Commissioner of this court for the taking of evidence on the issue.

It is so ordered.

JONES, Chief Judge, and LARA-MORE, MADDEN and WHITAKER, Judges, concur.