FRELERO CORPORATION, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 126, Docket 27587.

United States Court of Appeals
Second Circuit.

Argued Jan. 31, 1963.

Decided April 1, 1963.

J. Sterling Halstead, Washington, D. C., for petitioner.

Michael A. Mulroney, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson,

and I. Henry Kutz of the Dept. of Justice on the brief), for respondent.

Before LUMBARD, Chief Judge, and SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Petitioner seeks review of a decision of the Tax Court which upheld the Commissioner's determination that petitioner was liable for personal holding company surtax for the year 1952. We reverse.

We shall first briefly summarize the circumstances which were held to have made petitioner liable to taxation as a personal holding company.

Until July 1952 Frelbro Corporation owned all the stock in Brown-Longyear Motors, Inc. In July 1952 John Longyear exercised an option which he had had for some time to purchase 51% of the Brown-Longyear stock. In connection with this stock purchase it was agreed that the balance owing from Brown-Longyear to Frelbro at the beginning of 1952, including an amount credited to dividends, should be paid, together with dividends declared during 1952. However, because Longyear did not want to take over ownership with depleted cash reserves, Frelbro agreed to donate to Brown-Longyear's surplus the amount of $52,213.91.[1] This agreement was executed by an exchange of checks, Brown-Longyear delivering to Frelbro its checks to the total of $61,598.56 and Frelbro simultaneously delivering to Brown-Longyear a check in the amount of $52,213.91. At the time of this transfer of checks neither Brown-Longyear nor Frelbro had in its bank account enough to cover its liability on its checks but for the amount received by reason of the transfer.

The Tax Court held that $45,685.83 of the amount paid by Brown-Longyear to Frelbro was on account of dividends. Adding this amount to certain items of income from other sources the Tax Court determined that since the total of this "personal holding company income" was greater than 80% of Frelbro's gross income (and since Frelbro met the "stock ownership requirement" by having "not more than five" stockholders), Frelbro was liable for personal holding company surtax under Internal Revenue Code of 1939 §§ 500–502.[2]

Petitioner disputes this result on two grounds. First, it maintains that the Brown-Longyear Corporation, which was the product of the consolidation of two pre-existing corporations, was entitled for tax purposes to carry over the deficit of its predecessor corporations, with the result that post reorganization earnings were absorbed by the deficit, and the payment to Frelbro, except for that part representing 1952 earnings, was therefore

---

1. The record does not reveal the reason for arriving at this exact amount.

2. "§ 500. Surtax on personal holding companies
   "There shall be levied, collected, and paid, for each taxable year beginning after December 31, 1938, upon the undistributed subchapter A net income of every personal holding company (in addition to the taxes imposed by chapter 1) a surtax equal to the sum of the following:
   "(1) 75 per centum of the amount thereof not in excess of $2,000; plus
   "(2) 85 per centum of the amount thereof in excess of $2,000."
   "§ 501. Definition of personal holding company
   "(a) General Rule.—For the purposes of this subchapter and chapter 1, the term 'personal holding company' means any corporation if—

"(1) Gross income requirement. At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 502; * * * and

"(2) Stock ownership requirement. At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. * * *"

"§ 502. Personal holding company income
   "For the purposes of this subchapter the term 'personal holding company income' means the portion of the gross income which consists of:
   "(a) Dividends, interest (other than interest constituting rent as defined in subsection (g)), royalties (other than mineral, oil, or gas royalties), annuities. * * *"

(26 U.S.C. §§ 500–502).

not a dividend within the meaning of § 115 of the Code. Second, petitioner argues that the practical content of the transaction involving the exchange of checks, whatever its formal aspects, resulted in a dividend to Frelbro amounting only to the difference ($9,384.65) between the amounts exchanged. If the latter view is accepted Frelbro's "personal holding company income" was less than the requisite 80% of gross income.

We find it unnecessary to consider the first of petitioner's contentions, since we are persuaded that for purposes of determining whether petitioner was a personal holding company within the meaning of the statute, only the net amount actually received by petitioner ($9,-384.65) is properly to be taken into account as a "dividend."

■ We do not believe that we are obliged, as the government urges upon us, to regard only the form of the transaction and to disregard its substance, which the petitioner characterizes as "a very awkward and ill-advised method of transferring earnings of Brown-Longyear to its surplus account." In the absence of any suggestion that tax-avoidance motivated the transaction, we believe that this is a case for application of the basic principle that "the incidence of taxation depends upon the substance, not the form, of the transaction." Commissioner v. Hansen, 360 U.S. 446, 461, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959). The principle is not to be applied only when it benefits the government. Cf. Schinebro, Inc. v. Commissioner, 131 F.2d 504 (2d Cir. 1942); Steel Improvement and Forge Co. v. Commissioner, 314 F.2d 96 (6th Cir. 1963).

■ The only reason for characterizing the payment to petitioner as a payment of dividends is because the parties ill-advisedly called it that. Actually, except for the amount of $9,384.65, nothing was paid and nothing was received. Brown-Longyear did not even have enough in its bank account to cover the so-called payment. At no moment did Frelbro have any right to the control or disposition of the amount received from Brown-Longyear since not only was Frelbro, as an agreed part of the same transaction, under a duty to return the money immediately upon its receipt, but the checks were simultaneously exchanged. Frelbro did not receive the payment from Brown-Longyear under any "claim of right" within the meaning of the cases which have given effect to that concept.[3]

The "claim of right" cases involve an independent duty to return a payment at some later date and usually concern themselves with whether a payment is taxable in the year when made although the taxpayer may be able to deduct the amount when he repays it in a subsequent year.

"The rule is founded upon the necessity of giving finality to the annual accounting period and upon recognition of the impracticability of compelling the treasury to determine when a taxpayer's claim is without legal warrant. United States v. Lewis, supra, 340 U.S. at page 592, 71 S.Ct. at page 523; Rutkin v. United States, 343 U.S. 130, 137,

3. See Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 (1953); Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952); United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951); Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934); North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932); Whitaker v. Commissioner, 259 F.2d 379 (5th Cir. 1958); Dawkins v. Commissioner, 238 F.2d 174 (8th Cir. 1956); Davis v. United States, 226 F.2d 331 (6th Cir. 1955), cert. denied, 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838 (1956); Marienfeld v. United States, 214 F.2d 632 (8th Cir.), cert. denied, 348 U.S. 865, 75 S.Ct. 87, 99 L.Ed. 681 (1954); Crellin's Estate v. Commissioner, 203 F.2d 812 (9th Cir. 1953); United States v. Lesoine, 203 F.2d 123 (9th Cir. 1953); Haberkorn v. United States, 173 F.2d 587 (6th Cir. 1949); St. Regis Paper Co. v. Higgins, 157 F.2d 884 (2d Cir.), cert. denied, 330 U.S. 843, 67 S.Ct. 1083, 91 L.Ed. 1288 (1946); First Nat'l Bank v. Commissioner, 107 F.2d 141 (6th Cir. 1939); National City Bank of New York v. Helvering, 98 F.2d 93 (2d Cir. 1938).

72 S.Ct. 571, 96 L.Ed. 833. Pecuniary gain received under a claim of right must be reported for the year in which it has been received. If the taxpayer is subsequently adjudged liable to return the funds, he is allowed a deduction for the year in which they are repaid."

United States v. Lesoine, 203 F.2d 123, 126 (9th Cir. 1953).

In United States v. Merrill, 211 F.2d 297 (9th Cir. 1954), the court found the "claim of right" doctrine inapplicable, saying:

"[T]he mistake was discovered in the same year as the sum was received (1940) and appropriate adjustments were made in [the taxpayer's] own books and those of his wife's estate *in that year* in recognition of the mistake. We think the $7500 receipt in 1940 was thereby placed outside the operation of the 'claim of right' rule. That rule is founded upon the proposition that, when funds are received by a taxpayer under claim of right, he must be held taxable thereon, for the Treasury cannot be compelled to determine whether the claim is without legal warrant, and repayment of the funds in a later year cannot, consistently with the annual accounting concept, justify a refund of the taxes paid. United States v. Lesoine, supra, 203 F.2d at page 126, and cases there cited. The usual case for application of the rule involves a taxpayer who [has] received funds during a taxable year, *who maintains his claim of right thereto during that year*, and who subsequently, in a later year, is compelled to restore the sum when his claim proves invalid. We are not aware that the rule has ever been applied where, as here, in the same year that the funds are mistakenly received, the taxpayer discovers and admits the mistake, renounces his claim to the funds, and recognizes his obligation to repay them. Cf. Carey Van Fleet, 2 B.T.A. 825; Curran Realty Co. v. Commissioner, 15

T.C. 341. We think there is no warrant for extending the harsh claim of right doctrine to such a situation. In such case the Internal Revenue Bureau is not faced with the problem of deciding the merits of the claim to the funds received, for the question has been resolved by the interested parties." 211 F.2d at 303–304 (footnote omitted).

In the present case the duty to return was pre-existing and adherent to the payment itself, and payment and return were simultaneous.

The present case resembles those situations in which a taxpayer who receives a payment which he is not entitled by law or by contract to keep and which he separates from his own funds and pays to a third person or returns to the payor is held not to have received taxable income. See, for example, Lashell's Estate v. Commissioner, 208 F.2d 430 (6th Cir. 1953); Bates Motor Transport Lines, Inc. v. Commissioner, 200 F.2d 20 (7th Cir. 1952); Sohio Corp. v. Commissioner, 82 U.S.App.D.C. 275, 163 F.2d 590 (1947); Commissioner v. Brown, 54 F.2d 563 (1st Cir.), cert. denied, 286 U.S. 556, 52 S.Ct. 639, 76 L.Ed. 1291 (1931); Wells v. United States, 106 Ct.Cl. 378, 64 F.Supp. 476 (1946); cf. Winkler v. United States, 230 F.2d 766 (1st Cir. 1956); Midvale Co. v. United States, 129 Ct.Cl. 483, 124 F.Supp. 678 (1954).

The nature of the personal holding company surtax makes it particularly important to determine by reference to the substance of the transaction rather than its form whether income was in fact received, for here we are not dealing with normal income tax, but with the severe penalty imposed on personal holding companies. "The personal holding company surtax is generally acknowledged to be a penalty imposed on these [sic] corporations coming *clearly* within the definitive language of Congress." Sicanoff Vegetable Oil Corp. v. Commissioner, 251 F.2d 765, 770 (7th Cir. 1958) (emphasis in original).

In Pembroke Realty & Securities Corp. v. Commissioner, 122 F.2d 252 (2d Cir.,

1941), this court explained the purpose of the personal holding company statute as follows:

"The legislation was enacted for the purpose of inducing personal holding companies to distribute current income by laying a penal surtax upon income which they retained. This is made crystal clear by the legislative history of the section. The reports cited in the footnote * recognize that the most prevalent form of tax avoidance practiced by individuals with large incomes was to transfer property to a controlled corporation—'the incorporated pocketbook'—with the result that income derived from the property would be taxed at corporation rates and no surtax would be paid by the individual, if the income was not distributed. An earlier attempt to prevent use of the corporate form to avoid surtaxes (section 104 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev. Acts, p. 375), had been found difficult to administer. In the 1934 Act, section 102, 26 U.S.C.A. Int.Rev.Acts, page 690, took the place of the earlier legislation with respect to corporations other than personal holding companies, and as to them section 351 provided for a tax which 'will be automatically levied' without the necessity of proving a purpose to avoid surtaxes." 122 F.2d at 253–254.[4]

See also 7 Mertens, Law of Federal Income Taxation § 40.03 (1956):

"* Preliminary Report of a Sub-Committee of the Committee on Ways and Means, 73rd Cong. 2d sess.; Report of. Committee on Ways and Means, House Rep. No. 704, 73rd Cong. 2d sess.; Report of Senate Finance Committee, Senate Rep. No. 558, 73rd Cong. 2d Sess.

4. See also, Cleary, Important Personal Holding Company Trends, New York University Sixth Annual Institute on Federal Taxation 883 (1948); Cleary, Consequences of Being a Personal Holding Company, New York University Ninth

"The sharp increase in rates made in 1937 reflected the desire of Congress to penalize personal holding companies, the activities of which it had under consideration. The rates were avowedly 'pressure' rates, intended not so much to produce revenue as to cause an abandonment of the use of personal holding companies by compelling them to distribute their total income, to abandon the characteristics which made them holding companies, or to dissolve." (Citing Report of the Joint Committee on Tax Evasion and Avoidance, 75th Cong., 1st Sess. p. 8.)

It would be completely at variance with the purpose of the personal holding company legislation, as demonstrated by these authorities, to uphold the imposition of the tax for failing to distribute accumulated income when, as here, there is no accumulation and no income to distribute. This was the position taken by the court in Knight Newspapers, Inc. v. Commissioner, 143 F.2d 1007, 154 A.L.R. 1267 (6th Cir. 1944). There the petitioner received sufficient dividends in 1939 to make it a personal holding company in 1939. In 1940, the 1939 dividend was found to have been illegally declared as a result of mistake, and was rescinded. The court held that the taxpayer was not a personal holding company in 1939 "[f]or otherwise, petitioner would be required to make payment of a personal holding surtax * * * for failing to distribute accumulated income when there was no accumulation and no income to distribute * * *." 143 F.2d at 1011.[5]

Annual Institute on Federal Taxation 761 (1951); Halperin, Personal Holding Company Income, 23 Taxes 532 (1945); Maloney, What is a Personal Holding Company?, New York University Ninth Annual Institute on Federal Taxation 745 (1951). See generally, 7 Mertens, Law of Federal Income Taxation, ch. 40 (1956).

5. In Haberkorn v. United States, 173 F.2d 587 (6th Cir.1949), the court, referring to the Knight case, said:
"That case involved a personal holding company surtax where an offsetting deduction in a later year was not provided

We conclude, upon scrutiny of the substance of the transaction in question, that the income resulting to Frelbro was insufficient to constitute it a personal holding company within the meaning of the statute. We therefore reverse the decision of the Tax Court.

Reversed.

for. The income which the Commissioner attempted to make subject to the tax was never in fact received by the taxpayer, no claim of right was ever asserted by it and, as pointed out by the opinion in differentiating the cases, no economic gain resulted to the taxpayer stockholder. In that case we applied the theory of a constructive trust in order to avoid a harsh and unjust tax resulting from the combination of those facts." 173 F.2d at 590.

This court criticized the result reached in the Knight case because the mistake was discovered and the dividend rescinded a year after the illegal declaration, see St. Regis Paper Co. v. Higgins, 157 F.2d 884, 885 (2d Cir. 1946). The criticism is not applicable to the present case where the dividend was immediately returned.