ALASKA PUBLIC SERVICE EMPLOYEES LOCAL 71, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alaska Public Service Employees Local 71 v. Commissioner
Docket No. 7396-89
United States Tax Court
T.C. Memo 1991-650; 1991 Tax Ct. Memo LEXIS 692; 62 T.C.M. (CCH) 1664; T.C.M. (RIA) 91650; December 30, 1991, Filed *692 Decision will be entered for the respondent. Kevin P. Dougherty, for the petitioner. Robert P. Crowther, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 11,454 for taxable year 1984. The issues for decision are: (1) Whether petitioner, a labor organization, is liable for tax under section 527(b) and (f) as the result of its 1984 transfer of $ 25,000 to its separate segregated political organization account. We hold that it is. (2) Whether petitioner can, in effect, reverse the transaction and avoid the tax by transferring $ 25,000 from its political account back to its general account in 1987, after respondent notified petitioner that it intended to assess tax for the transfer. We hold that it cannot. All section references are to the Internal Revenue Code as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioner and Petitioner's Political League
Petitioner Alaska Public Service Employees Local 71 is a labor organization as defined *693 in section 501(c)(5) and is exempt from tax under section 501(a). It is included under Group Exemption Number 121 issued to its parent, the Laborers' International Union of America, AFL-CIO. Petitioner, an unincorporated association, had its principal offices in Anchorage, Alaska, when it filed its petition in this case. During 1984, petitioner maintained a general fund in which it deposited dues and other revenue items and from which it paid all expenses. During 1984, the general fund had account No. 3-770818 at the National Bank of Alaska. Petitioner also maintained a separate segregated fund within the meaning of section 527(f)(3) and section 1.527-2(b), Income Tax Regs., for making political contributions during 1984. It was called the Political League (Political League). During 1984, the Political League had account No. 3-006366 at the National Bank of Alaska. Most of the funds available to the Political League in 1984 were contributed by union members, including an apportionment of 5 percent of general fund dues to the political fund that could have been discontinued at the election of the member. Some additional contributions were withheld from the salaries of petitioner's *694 office staff pursuant to voluntary payroll deduction agreements. Member contributions to the political fund were normally deposited in the general account as part of member dues. Office staff contributions were simply left in the general account when petitioner issued its payroll checks. The amounts destined for the political fund from these two sources were promptly transferred (up to four times each month) from the general account to the separate account for the political fund. The parties agree that the general fund served only as a conduit for these moneys as provided in section 527. 2. Petitioner's $ 25,000 Additional Transfer to the Political League
During 1984, petitioner's executive board authorized the transfer of an additional $ 25,000 from the general fund to the Political League. The transfer was made on October 8, 1984. The $ 25,000 transfer was in addition to the five percent allocation of member dues and the voluntary contributions to the Political League through payroll deductions described above. The $ 25,000 transfer was made from undesignated funds in petitioner's general fund, containing dues and other revenue items. The record contains only the *695 total amount of interest earned by petitioner in 1984, and a list of deposits by date and amount for the months May through September 1984. On May 29, 1987, respondent notified petitioner that it proposed to assess tax against petitioner under section 527 as a result of the $ 25,000 transfer in 1984. At a meeting on July 6, 1987, petitioner's executive board attempted to reverse the $ 25,000 payment by adopting a motion providing for the transfer of $ 25,000 from the political fund to the general fund. On July 15, 1987, a $ 25,000 check was issued from the Political League account to the general fund. During 1984, petitioner earned and received $ 59,127 in interest income. Petitioner's net investment income during 1984 was more than $ 25,000, the amount of the transfer from petitioner's general account to the account of the Political League. OPINION The issue for decision is whether petitioner is liable for the tax imposed by section 527 as a result of its transfer in 1984 of $ 25,000 to its Political League. The parties agree that petitioner transferred $ 25,000 from its general account to a separate account maintained to fund political contributions, that petitioner is a *696 section 501(c)(5) labor organization, that the account to which this money was transferred was a separate segregated fund within the meaning of section 527(f)(3), that the Political League is a political organization engaged in influencing the selection of political candidates, and that petitioner's net investment income was in excess of $ 25,000. 1. Petitioner's Transfer of $ 25,000 in 1984
Petitioner argues that section 1.527-6(e), Income Tax Regs., allows the transfer of petitioner's dues to its separate segregated fund. Section 1.527-6(e), Income Tax Regs., provides: (e) Transfer not treated as exempt function expenditures. Provided the provisions of this paragraph (e) are met, a transfer of political contributions or dues collected by a section 501(c) organization to a separate segregated fund as defined in paragraph (f) of this section is not treated as an expenditure for an exempt function (within the meaning of § 1.527-2(c)). Such transfers must be made promptly after the receipt of such amounts by the section 501(c) organization, and must be made directly to the separate segregated fund. A transfer is considered promptly and directly made if: (1) The *697 procedures followed by the section 501(c) organization satisfy the requirements of applicable Federal or State campaign law and regulations; (2) The section 501(c) organization maintains adequate records to demonstrate that amounts transferred in fact consist of political contributions or dues, rather than investment income; and (3) The political contributions or dues transferred were not used to earn investment income for the section 501(c) organization.
Petitioner contends that: (1) It followed Federal and State campaign laws, (2) it maintained adequate records which demonstrate that the amounts transferred consisted of dues and not investment income, and (3) the dues transferred were not used to earn investment income. Petitioner asserts that because section 1.527-6(e), Income Tax Regs., specifically allows the transfer of dues funds to a separate segregated fund and because petitioner fulfilled the regulatory requirements, petitioner's tax-exempt status should be recognized, and the deficiency should not be sustained. Respondent argues that all of the requirements of section 527(b) and (f) are met and that petitioner is liable for the tax imposed by section 527. Respondent *698 notes that because it is undisputed that this separate segregated account was used to fund political contributions, the account is treated as a political organization for purposes of section 527(f)(3) during 1984 and the disbursements from the fund during 1984 clearly would have been toward an exempt function pursuant to section 527(e)(2). See sec. 1.527-6(f), Income Tax Regs. Respondent contends that the transfer from petitioner's general account to its Political League was therefore an expenditure of petitioner's funds for a section 527(e)(2) exempt function. Sec. 1.527-6(b)(1)(ii), Income Tax Regs. Accordingly, pursuant to section 527(f), petitioner is liable for the tax imposed by section 527(b) on the lesser of the amount transferred or its net investment income. Moreover, respondent contends that the parties have agreed on all of the facts necessary to fix the amount of the deficiency: that is, that the amount transferred was $ 25,000 and that petitioner's investment income during 1984 was greater than this amount. We hold that petitioner's transfer of $ 25,000 from its general fund to its Political League is subject to the tax imposed by section 527(f). The transfer *699 was made from undesignated funds in petitioner's general account, containing dues and other revenue items. The record contains only the total amount of interest earned by petitioner in 1984, and a list of deposits by date and amount for the months May through September 1984. Petitioner did not persuade the Court that the transfer consisted of dues and not investment income, and that the dues were not used to earn investment income (i.e., interest) before transfer. Accordingly, petitioner failed to meet the requirements of section 1.527-6(e), Income Tax Regs.
2. Petitioner's Return of the $ 25,000 in 1987
Petitioner argues that courts recognize equitable principles which negate the imposition of taxation upon the return and rescission of funds. United States v. Merrill, 211 F.2d 297 (9th Cir. 1954); Gargaro v. United States, 109 Ct. Cl. 528, 73 F. Supp. 973 (1947); Lilly v. Commissioner, 14 B.T.A. 703 (1928) (advances drawn by taxpayer in tax year and repaid in following year do not constitute income). Petitioner further contends that its tax-exempt status should be respected since it returned the *700 funds immediately upon realizing a tax assessment would be imposed. Petitioner maintains that its good faith rescission and return of the funds is sufficient to undo the transaction. Petitioner further argues that the return of $ 25,000 in 1987 effectively negates the transaction and that any tax which would otherwise apply under section 527(f)(3) should also be negated. Under section 527(b), an exempt organization is taxed on an amount equal to the lesser of its political campaign expenditures or its "net investment income." Thus, such an organization effectively loses the tax exemption on its investment earnings to the extent it uses funds to influence or attempt to influence the selection of candidates for government or political party office. Respondent contends that petitioner's attempt to avoid this tax by its 1987 transfer of $ 25,000 from its political account to its general account after notice of an IRS examination, should not prevail. Respondent argues that to allow a taxpayer to change the tax consequences of a transaction that occurred in an earlier year simply by reversing the net result of that transaction in a later one is inconsistent with the annual accounting *701 concept that is now well fixed as a part of Federal tax law. See Healy v. United States, 345 U.S. 278, 97 L. Ed. 1007, 73 S. Ct. 671 (1953); United States v. Lewis, 340 U.S. 590, 95 L. Ed. 560, 71 S. Ct. 522 (1951); North American Oil Consolidated v. Burnet, 286 U.S. 417, 76 L. Ed. 1197, 52 S. Ct. 613 (1932); Burnet v. Sanford & Brooks Co., 282 U.S. 359, 75 L. Ed. 383, 51 S. Ct. 150 (1931). Thus, respondent argues that transactions that are closed and completed in one taxable year are taxed in that year absent some statutory provision that allows the year to be reopened. Respondent maintains that Federal income taxes are imposed on transactions as they occur. See Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148-149, 40 L. Ed. 2d 717, 94 S. Ct. 2129 (1974). Thus, respondent argues petitioner cannot escape the tax by contending that it would not have made the transfer had it known that the transfer would form the basis for a tax or that another nontaxable transaction could have achieved the same result. Moreover, respondent claims, to recognize such a reversal when made after the IRS has determined to assess additional tax as a result of the original transaction would substantially interfere with the orderly *702 collection of revenue by making it impossible for the IRS to enforce the provisions of the Internal Revenue Code. See Healy v. Commissioner, supra at 284-285. We agree with respondent. We know of no statutory provision that would afford petitioner the relief it seeks. Section 1341 is clearly inapplicable because there was no prior inclusion of an amount in income under a claim of right and because petitioner's repayment to reverse the taxable transaction was voluntary. We do not read petitioner's cited cases to stand for the proposition that equitable principles require the imposition of tax be nullified upon the return and rescission of funds. In United States v. Merrill, supra at 303, the Ninth Circuit, the circuit to which this case is appealable, followed the Supreme Court's opinion in North American Oil Consolidated Co. v. Burnet, supra, and held that, under the claim of right doctrine, a taxpayer who receives earnings under a claim of right and without restriction as to its disposition is ordinarily deemed to have received taxable income, even though he may not be entitled to retain the money and even though he may *703 still be required to restore its equivalent. The Ninth Circuit further explained: That rule is founded upon the proposition that, when funds are received by a taxpayer under claim of right, he must be held taxable thereon, for the Treasury cannot be compelled to determine whether the claim is without legal warrant, and repayment of funds in a later year cannot, consistently with the annual accounting concept, justify a refund of the taxes paid.
211 F.2d at 304. Similarly, petitioner's reliance on Lilly v. Commissioner, supra, is misplaced. In Lilly, the taxpayer drew $ 24,113.43 as advances against his salary and commissions but earned only $ 19,856.76. The taxpayer repaid the advances in a later year. The Court ruled that the taxpayer was taxable only on the amount actually earned by him. We believe that the Court's finding that the advances were repaid is relevant in establishing that the advances involved were loans, and that repayment of the advances in a later year thus had no impact on their taxability in the earlier year. Petitioner also cites Gargaro v. United States, supra, in *704 support of its theory that its transfer of $ 25,000 from its separate segregated political fund to its general fund negates the tax determined by respondent by, in effect, undoing the taxable transaction. In Gargaro, the taxpayer was paid a bonus based on a contemporaneous calculation of the net earnings of his corporate employer. After the corporation refunded a portion of its earnings in a later year and its net income for the earlier year was correspondingly reduced, the taxpayer repaid the portion of his bonus attributable to the returned earnings in a taxable year after the year in which the full bonus was reported. The taxpayer then filed a claim for refund for the year the bonus was originally reported, citing his repayment of a portion of the bonus in the later year. The court in Gargaro awarded the taxpayer the refund he requested. While Gargaro arguably supports petitioner's position, we question its continuing validity in view of its reliance on the Supreme Court's decision in Commissioner v. Wilcox, 327 U.S. 404, 90 L. Ed. 752, 66 S. Ct. 546 (1946), which was subsequently overruled by James v. United States, 366 U.S. 213, 6 L. Ed. 2d 246, 81 S. Ct. 1052 (1961). Moreover, we *705 note that in Gargaro, the taxpayer repaid the bonus payment as a result of a bona fide legal obligation. Here, petitioner attempted to undo its transaction simply to avoid the adverse tax consequences attendant thereto. We view the facts of the instant case as analogous to those in Healy v. Commissioner, supra, wherein the Court held that the taxpayer's income tax liability for the year in which he received excess salary is not recomputed so as to exclude from income for that year that part of his salary subsequently determined to be excessive. In Healy, the taxpayer was a corporate officer who received a salary in excess of what could be deducted as reasonable compensation by his corporate employer for a given year. The Court held that under annual accounting principles the taxpayer could not avoid tax on the full amount received by returning the nondeductible "unreasonable" portion in a later year, and the adjustment should properly be made in the year of repayment of the amount earlier included in the taxpayer's income. We note that the tax exemptions granted to petitioner's general fund and Political League pursuant to sections 501(a) and 527, respectively, *706 are not unlimited. While petitioner could (absent the transfer that is in issue) have earned the investment income that it did during 1984 without incurring an income tax liability, petitioner's Political League could not. Political organizations pay tax on their political organization taxable income as defined in section 527(c). Pursuant to section 527(f), petitioner's transfer of $ 25,000 from its general fund to its Political League voids the tax exemption on its investment earnings to the extent of the amount contributed. We conclude that the $ 25,000 is taxable as if it had been earned directly by the separate segregated political fund. Accordingly, Decision will be entered for the respondent.